UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-80804-CIV-COHN/SELTZER

PRUCO LIFE INSURANCE COMPANY,

Plaintiff,

v.

STEVEN M. BRASNER, individually and as
Principal of Infinity Financial Group, LLC;
MARK A. TARSHIS; INFINITY FINANCIAL
GROUP LLC; WELLS FARGO BANK, N.A.,
as Securities Intermediary; and John Does 1-10,

Defendants.
_____/

## ORDER DENYING DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss [DE 30] ("Motion to Dismiss"). The Court has considered the Motion to Dismiss, Plaintiff's Response [DE 39], Defendant's Reply [DE 47], the argument of counsel at the January 6, 2011 hearing, Defendant's Supplemental Authority [DE 63, 63-1], the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

On July 9, 2010, Plaintiff Pruco Life Insurance Company, a subsidiary of The Prudential Life Insurance Company of America, filed its Complaint [DE 1] against Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), Infinity Financial Group LLC ("Infinity"), Infinity's principal, Steven M. Brasner, Infinity's employee, Mark A. Tarshis, and John Does 1-10. The Complaint brings a variety of claims stemming from the alleged fraudulent procurement of a $10 million insurance policy on the life of Arlene

Berger ("the Berger Policy"). According to the allegations in the Complaint, Defendants procured the Berger Policy by executing an illegal wagering contract rather than a legitimate insurance policy contract. Compl. ¶ 3.

In recent years, a secondary market for life insurance has emerged, in which existing life insurance policies are sold to third-parties who lack an insurable interest in the insured's life. Though this type of sale can be lawful if the policy was procured for legitimate purposes and there was an insurable interest at the inception of the policy, a stranger-originated life insurance ("STOLI") policy, that lacks insurable interest at inception and is sought for the purpose of re-sale to stranger-investors on the secondary market is void *ab initio*. See *infra*. According to the Complaint, STOLI policy promoters frequently provide false information during the insurance policy application process in order to obtain a policy with a larger face value than would be otherwise warranted, which in turn maximizes the promoter's profit when the policy is sold to investors. Plaintiff contends that the Berger Policy was "not merely an illegal wagering contract, but was the product of fraud." Compl. ¶ 6.

Specifically, the Complaint alleges that in or around February 2006, Mr. Brasner, a life insurance producer appointed by Plaintiff,[1] either on his own or with others, approached Ms. Berger to participate in a STOLI life insurance policy. The plan called for the application for a life insurance policy on Ms. Berger's life with Plaintiff, and the alleged concealment from Plaintiff of an intent to sell the policy, and/or an interest in the policy, to one or more investors in the secondary market. The plan also called for the

---

[1] Mr. Brasner's appointment with Plaintiff has since been terminated.

creation of a trust that would be the owner and the beneficiary of the Berger Policy. According to the Complaint, however, neither the trust nor the Berger Policy was intended for estate liquidity, financial planning, or any other legitimate insurance-related purpose. Instead, the policy was intended to be transferred to a STOLI investor in the secondary market, and the trust was intended to conceal this intention from Plaintiff.

On February 21, 2006, Ms. Berger applied for a $10 million life insurance policy with Plaintiff. Ms. Berger's husband, Richard Berger, was listed as the prospective beneficiary, but Plaintiff maintains that the defendants involved in the policy's procurement understood that Mr. Berger would not receive any death benefits from the Berger Policy upon his wife's death; rather, the beneficial interest would be sold to an investor with no insurable interest in Ms. Berger's life.

Along with Ms. Berger's application, Mr. Brasner submitted a Client Information Form [Compl. Ex. D], and Mr. Tarshis, an employee of Ms. Berger's financial advisor, Infinity, provided a Financial Statement [Compl. Ex. E]. The Client Information Form represented that the Berger Policy's purpose and amount was based on an "estate analysis." Compl. Ex. D. Plaintiff contends that the estate analysis in the Client Information Form was fraudulent because Mr. Brasner "grossly overstated Ms. Berger's income, assets and net worth," Compl. ¶ 35, and that the information in the Financial Statement was similarly false, id. ¶ 46. According to the Complaint, "[h]ad Prudential known that any of the representations in the Client Information Form [or the Financial Statement] were false, Prudential would have declined to issue the Berger Policy." Compl. ¶¶ 41, 48.

But because it did not know the information was false, on April 13, 2006,

Prudential issued the Berger Policy, number V1208044, on Arlene Berger's life in the amount of $10 million. The Policy was delivered on or about April 28, 2006. The Complaint states that after an initial premium payment was made on May 2, 2006, the Policy was placed in force on or about May 10, 2006.[2] One month later, on June 16, 2006, Mr. Brasner and Infinity requested to change the Berger Policy's owner and beneficiary to the Wilmington Trust Company as Trustee of the Arlene Berger 2006 Life Insurance Trust dtd. 6/5/06. Thereafter, on December 24, 2008, Prudential received a second request to change the owner and beneficiary, this time to Wells Fargo Bank N.A. as Securities Intermediary.

Based on these facts, Plaintiff filed its five-count Complaint against Defendants Wells Fargo, Infinity, Mr. Brasner, Mr. Tarshis, and John Does 1-10.[3] Of the five counts, Plaintiff brings only one count against Wells Fargo: Count I for declaratory judgment that the Berger Policy lacked an insurable interest at inception and is therefore void *ab initio*. On September 30, 2010, Wells Fargo moved to dismiss Count I of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and (7).

---

[2] Though Plaintiff's Complaint states that "the Berger Policy was placed in-force on or about May 10, 2006," Compl. ¶ 50, Plaintiff argues in its Response to the Motion to Dismiss that the Policy was only "*seemingly*" placed in force that day, as Plaintiff contends that the Policy was never actually placed in force due to the lack of insurable interest at inception. Resp. at 4.

[3] On January 4, 2011, the Court entered a Default Final Judgment [DE 61] against Defendant Brasner and Defendant Infinity.

4

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). At this stage in the litigation, the Court must consider the factual allegations in the Complaint as true, and accept all reasonable inferences therefrom. Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

Under Federal Rule of Civil Procedure 12(b)(7), a motion to dismiss lies for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 requires that:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

5

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.

### III. ANALYSIS

Wells Fargo seeks dismissal of Count I for failure to state a claim upon which relief can be granted and failure to join an indispensable party. In support, Wells Fargo argues that (1) an insurable interest existed on the Policy's inception date, (2) Florida's incontestability statute and the Policy's two-year incontestability provision bar Count I, (3) Plaintiff failed to join Arlene Berger, who is an indispensable party, and (4) Plaintiff's request to retain premiums is contrary to Florida law. The Court will address each argument in turn.

#### A. Insurable Interest

Count I alleges that the Berger Policy was void *ab initio* because there was no insurable interest at the Policy's inception. In its Motion to Dismiss, Wells Fargo argues that there was in fact an insurable interest at the Policy's inception.

"Florida courts have long held that insurable interest is necessary to the validity of an insurance contract and, if it is lacking, the policy is considered a wagering contract and void *ab initio* as against public policy." Atkinson v. Wal-Mart Stores, Inc., No. 8:08-cv-691-T-30TBM, 2009 WL 1458020, at *3 (M.D. Fla. May 26, 2009) (citing Knott v.

6

State ex rel. Guar. Income Life Ins. Co., 186 So. 788, 789-90 (Fla. 1939)); see also Fla. Stat. § 627.404(1). Pursuant to Florida Statute § 627.404, an "insurable interest" includes several enumerated interests, including (1) an individual's interest in her own life, body, and health and (2) an individual's interest in the life, body, and health of "another person to whom the individual is closely related by blood or by law and in whom the individual has a substantial interest engendered by love and affection." Fla. Stat. § 627.404(2)(b)2. The "insurable interest need not exist after the inception date of coverage under the contract." Fla. Stat. § 627.404(1). Florida law permits life insurance policies to be assigned to entities without insurable interests, see AXA Equitable Life Ins. Co. v. Infinity Fin. Group, LLC, 608 F. Supp. 2d 1349, 1356 (S.D. Fla. 2009), but such assignments must be made "in good faith, and not [as] sham assignments made simply to circumvent the law's prohibition on 'wagering contracts,'" id. Transfer agreements which pre-date the contract's inception thereby violate Florida law unless the transferee has an insurable interest. See id. at 1356-57; The John Hancock Life Ins. Co. v. Rubenstein, No. 09-21741-CIV-UNGARO, DE 28 at 5 (S.D. Fla. filed June 24, 2009).

Neither party disputes that Florida law requires an insurable interest to exist at an insurance contract's inception, or that Wells Fargo, the Policy's current owner and beneficiary, has no insurable interest. Rather, the dispute centers on whether there actually was an insurable interest in existence at the Berger Policy's inception. At inception, the Policy listed Ms. Berger as the owner and Mr. Berger as the beneficiary. Ms. Berger had an insurable interest in her own life, see Fla. Stat. § 627.404(2)(b)1, and as the insured individual's husband, Mr. Berger had an insurable interest as well

7

because he was both closely related to Ms. Berger by blood and had a substantial interest engendered by love and affection, see Fla. Stat. § 627.404(2)(b)2. Plaintiff agrees that "an insured and her husband would normally have an insurable interest in the insured's life," Resp. at 9, yet, Plaintiff argues that there is still no insurable interest here because Defendants' agreement to transfer the Policy, an agreement which pre-dated the Policy's inception, destroyed the good faith requirement. Id. at 9-10.

In this case, the Complaint asserts that Ms. Berger never intended to maintain the policy herself, and that Mr. Berger never intended to retain his interest. These facts are similar to AXA Equitable Life Insurance Co. v. Infinity Financial Group, LLC, 608 F. Supp. 2d 1349, 1356-57 (S.D. Fla. 2009), another case about an alleged STOLI scheme orchestrated by Mr. Brasner. The AXA Equitable Life Court denied dismissal despite the defendant's argument that the insurable interest only needed to exist at the contract's inception because the plaintiff's allegations, if proven, would demonstrate a lack of good faith and would therefore render the policies void *ab initio* for lack of an insurable interest. Similarly, Plaintiff's allegations here, if proven, would show that there was an agreement prior to the issuance of the Berger Policy to assign the policy to an entity without an insurable interest in Ms. Berger's life. Such facts would demonstrate that the Berger Policy was not procured in good faith, and that there was therefore no valid insurable interest. See AXA Equitable Life, 608 F. Supp. 2d at 1356-57; Rubenstein, No. 09-21741-CIV-UNGARO, DE 28 at 5. Accordingly, at this time, the Court will not dismiss Count I based on Wells Fargo's argument that there was a valid

insurable interest at the Policy's inception.[4]

## B. The Incontestability Statute and Clause

Wells Fargo contends that Count I must fail because it was not brought before the expiration of the two-year contestability period mandated by Florida statute and by the Berger Policy itself. Pursuant to Florida's incontestability statute:

> Every insurance contract shall provide that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue except for nonpayment of premiums and except, at the option of the insurer, as to provisions relative to benefits in event of disability and as to provisions which grant additional insurance specifically against death by accident or accidental means.

Fla. Stat. § 627.455. As the statute requires, the Berger Policy contained the following incontestability clause:

---

[4] The Court also will not dismiss Count I based on Wells Fargo's related argument that any alleged fraud does not affect Wells Fargo's interest in the Berger Policy. Wells Fargo concludes that because the Complaint does not allege that Wells Fargo knew of or participated in any wrongdoing surrounding the Policy's application, Wells Fargo is a bona fide assignee for value, whose interests may not be voided. See Mot. at 13. Plaintiff responds that a bona fide assignee for value defense does not apply here, but that even if it did, such a defense would raise unresolved issues of fact including, for instance, the extent of Wells Fargo's knowledge of and participation in the STOLI scheme.

Furthermore, Plaintiff contends that this defense is unavailable if the Policy is declared void *ab initio*. Florida's statute regarding the power to transfer and good faith purchase of goods provides as follows:

> A purchaser of goods acquires all title which her or his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value.

Fla. Stat. § 672.403(1). A policy that is void *ab initio*, however, is distinct from a policy that is voidable, and is not covered under the language of this bona fide purchaser defense. See id. Accordingly, even if Wells Fargo's bona fide assignee for value defense applied here, unanswered questions of law and fact preclude dismissal at this stage.

> Except as we state in the next sentence, we will not contest this contract after it has been in force during the Insured's lifetime for two years from the issue date. The exceptions are: (1) non-payment of enough premium to pay the required charges; and (2) any change in the contract that requires our approval and that would increase our liability. For any such change, we will not contest the change after it has been in effect for two years during the lifetime of the Insured.

Compl. Ex. F at 14.

If Prudential placed the Berger Policy in force on May 10, 2006, as stated in the Complaint and in the Motion to Dismiss, see Compl. ¶ 50; Mot. at 2, then the contestability period expired at the latest, on May 11, 2008. Plaintiff did not file the instant action challenging the insurance policy until July 9, 2010, over two years after this expiration date. The parties do not dispute that none of the exceptions to incontestability apply here. Nevertheless, Plaintiff argues that because the Policy lacked an insurable interest at inception, rendering it void *ab initio*, neither the Policy nor the incontestability clause contained in the Policy was ever actually placed in force. Resp. at 4, 5-9. The dispute therefore turns on the enforceability of the incontestability clause in the face of a claim that the Policy was void *ab initio*.

Courts are divided on the issue of whether an incontestability clause applies to bar a claim that a contract is void *ab initio*. Courts following the majority view hold that incontestability clauses have no effect where a policy is void *ab initio* for lack of an insurable interest. 7 Williston on Contracts § 17:5, n.23 (2010). Such courts will allow an insurance company to raise a void *ab initio* claim even after the incontestability period has expired. See, e.g., Beard v. Am. Agency Life Ins. Co., 550 A.2d 677, 691 (Md. 1988) (applying Maryland law, and holding that "while the incontestability statute serves the substantial public interest in protecting claimants from the possibility of

expensive litigation, the public policy behind the statutory requirement that the procurer of insurance have an insurable interest in the insured is an even more compelling goal."); Wood v. NY Life Ins. Co., 783 F.2d 990, 996 (11th Cir. 1986) (applying Georgia law, and agreeing with the Supreme Court of Georgia that incontestability clauses had no effect on void *ab initio* policy); Obartuch v. Sec. Mut. Life Ins. Co., 114 F.2d 873, 878 (7th Cir. 1940) (applying Illinois law, and stating that incontestability clause cannot apply to a void *ab initio* contract because the clause itself applies only in a valid contract, and to rule otherwise would be to use the clause "as a vehicle to sanctify that which never existed."). In contrast, courts following the minority view hold that incontestability clauses bar insurance companies' claims regarding the validity of insurance policies. See, e.g., Lincoln Life & Annuity Co. of NY v. Bernstein, 890 N.Y.S.2d 369, 2009 WL 1912468, at *4 (N.Y. Sup. Ct. 2009) ("insurance company can not rescind for 'lack of insurable interest' after the contestability period ends, regardless of the merits of their allegations"); New Eng. Mut. Life Ins. Co. v. Caruso, 535 N.E.2d 270, 271 (N.Y. 1989) (holding that under New York law, "passage of the incontestability period bars the insurer from thereafter asserting the policyholder's lack of an insurable interest"); see also Bogacki v. Great-West Life Assurance Co., 234 N.W. 865, 866-67 (Mich. 1931) ("The incontestability statute of this state expresses public policy on the subject and, after the lapse of two years, contest is limited to the exceptions stated in the statute.").

Florida law embraces both the public policy that prohibits an insurance company from contesting the policy after the contestability period expires and the public policy that an insurable interest is necessary for an insurance policy to be valid in the first

11

place. See Fla. Stat. § 627.404(1); Fla. Stat. § 627.455. Neither party cites binding caselaw requiring this Court to reconcile one policy over the other. However, at least one other court in the Southern District of Florida has conformed to the majority view in the face of a challenge regarding lack of insurable interest after a contestability period had expired. See Rubenstein, No. 09-21741-CIV-UNGARO. In Rubenstein, Judge Ungaro held that "if the Policy is void *ab initio* because an insurable interest is lacking, the incontestability clause would be of no effect." Rubenstein, No. 09-21741-CIV-UNGARO, DE 28 at 5, 5 n.4. Furthermore, the minority view decisions are distinguishable from this case. For instance, Maryland's Beard case distinguished its facts from Michigan's Bogaski case, emphasizing that though Michigan's incontestability policy overrode the public policy interest underlying the insurable interest doctrine, Maryland had a public policy interest in both incontestability and insurable interest because, unlike Michigan, Maryland's legislature wrote statutes regarding both incontestability and insurable interest. Beard, 550 A.2d at 689-90. The same distinction applies here, as the Florida legislature has promulgated statutes regarding both policies. See Fla. Stat. § 627.404(1); Fla. Stat. § 627.455.[5]

---

[5] Wells Fargo relies on Allstate Life Insurance Co. v. Miller, 424 F.3d 1113 (11th Cir. 2005), in support of its argument that Plaintiff's claim is barred by the incontestability clause in the Berger Policy, but as Plaintiff notes, the Miller case is distinct from this case. The insurance company in Miller attempted to claim that a policy was void *ab intio* based on an imposter defense, but in ruling that the incontestability clause barred the insurance company's claim, the court equated the imposter defense with a fraud defense, thereby classifying it as a voidability claim rather than a void *ab intio* claim. 424 F.3d at 1117 ("we agree with the district court that the 'imposter defense' is merely a species of fraud, indistinguishable from the use of an imposter for incontestability purposes.") A claim for lack of insurable interest, however, is different from a standard fraud or imposter-based claim in that a successful lack of insurable interest claim renders the insurance policy void *ab initio* rather than voidable.

Though Wells Fargo presents a compelling policy argument that the minority view encourages "insurers to timely investigate suspicious circumstances, protects policyholders, and prevent[s] insurers from receiving a windfall years down the road," Reply at 4 (citing Caruso, 535 N.E.2d at 275), there is a compelling countervailing view that allowing an incontestability period to bar a lack of insurable interest claim actually encourages fraud, see Settlement Funding, LLC v. AXA Equitable Life Ins. Co., 06 CV 5743(HB), 2010 WL 3825735, at *5 (S.D.N.Y. Sept. 30, 2010). The recent Settlement Funding case distinguishes the Caruso case on which Wells Fargo relies, noting that under the minority view, "if bad actors can disguise their fraud for two years, their hands are washed clean . . . and they are free to collect on their ill-gotten gains." Id. Absent any indication that the Florida legislature intends for courts to enforce incontestability periods to bar lack of insurable interest claims, this Court agrees with Judge Ungaro's opinion in Rubenstein that the majority view allowing a lack of insurable interest claim to proceed despite the expiration of an incontestability clause is the proper view under Florida law. See No. 09-21741-CIV-UNGARO, DE 28 at 5. Accordingly, the Court will allow Plaintiff to pursue its claim that the Berger Policy is void *ab initio*, because should Plaintiff prevail, the incontestability never went into effect and therefore never expired.

---

Therefore, though the incontestability provision in a fraud or imposter-based claim would bar such a claim from proceeding after the contestability period expires, the incontestability provision in a lack of insurable interest claim would never take effect if the policy was actually void *ab initio*, and therefore could not bar a lack of insurable interest claim.

13

### C. Failure to Join an Indispensable Party

Wells Fargo also seeks dismissal based on Plaintiff's failure to join Ms. Berger as a defendant. Under Federal Rule of Civil Procedure 19, a person "*must* be joined as a party if . . . that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19 (emphasis added).

Wells Fargo argues that Plaintiff's failure to join Mrs. Berger as a named defendant has denied her the ability to protect her interests in the insurance policy on her own life. However, Ms. Berger has not had an interest in the Berger Policy ever since the Policy's ownership was transferred in 2006. Both parties agree that Wells Fargo is now the Berger Policy's current legal owner. See Mot. at 1; Resp. at 17. As such, Wells Fargo has been "effectively substituted as the insured." See AXA Equitable Life, 607 F. Supp. 2d at 1356 ("an assignment of an insurance policy places the assignee in the same status with respect to all rights and liabilities under [the policy] which the insured occupied before the transfer; the assignee is effectively substituted as the insured."). Accordingly, the Court will not dismiss the Complaint for Plaintiff's failure to join Ms. Berger as a named defendant.

### D. Request to Retain Premiums

In Plaintiff's prayer for relief, in addition to its requests for a declaration that the Berger Policy is void *ab initio*, for damages, and for costs, Plaintiff requests that Defendants be "estopped from seeking a return of the premiums paid in connection with

14

the Berger Policy." Compl. at 19 (Relief Requested ¶ B). Wells Fargo seeks to dismiss this request, arguing that allowing Plaintiff to retain premiums in addition to declaring the Policy void *ab initio* would unjustly enrich Plaintiff.

Normally, Florida law provides that when an insurance law violation "renders the insurance contract void, the insured[] [is] entitled to restitution of the premiums paid on the insurance contract. The insurer must place the insured back in the same position the insured was in before the effective date of the policy through the return of the premium." Gonzales v. Eagle Ins. Co., 948 So. 2d 1, 3 (Fla. Dist. Ct. App. 2006) (citing 9 Fla. Jur. 2d, Cancellation § 35 (2004); see also Leonardo v. State Farm Fire & Cas. Co., 675 So. 2d 176, 179 (Fla. Dist. Ct. App. 1996) (equating voiding an insurance policy with rescission of the policy, and stating that "[w]here an insurer seeks to rescind a voidable policy, it must both give notice of rescission and return or tender all premiums paid within a reasonable time after discovery of the grounds for avoiding the policy."). In the event that an insurer seeks to declare a policy void *ab initio* due to a policy's fraudulent procurement, however, some courts have allowed insurers to seek to retain premiums. See, e.g., PHL Variable Ins. Co. v. Lucille E. Morello 2007 Irrevocable Trust, No. 08-572 (MJD/SRN), 2010 WL 2539755, at **4-5 (D. Minn. Mar. 2, 2010) (stating that public policy requires allowing an insurer to seek to retain premiums, as "[a] contrary rule would be an invitation to commit fraud"); James v. Ins. Co. of N. Am., 18 S.W. 260, 260 (Tenn. 1891) (requiring return of premiums only upon a showing that there was no intentional fraud on the part of the insured); Curry v. Wash. Nat'l Ins. Co., 194 S.E. 825, 826 (Ga. Ct. App. 1937) (holding that insured was entitled to return of premiums paid, unless he was guilty of actual fraud); see also Wuliger v. Mfrs. Life Ins.

15

Co., 567 F.3d 787, 799-800 (6th Cir. 2009) (holding that unjust enrichment claim as basis for returning premiums would be without merit when premiums were paid pursuant to an express insurance contract).

Though in one Florida case, Diaz v. Florida Insurance Guaranty Association, Inc., 650 So. 2d 675, 676 (Fla. Dist. Ct. App. 1995), the court required an insurance company to return premiums even when there was fraud on the part of the insured, Plaintiff here alleges fraud not only on the part of the insured, but also on the part of its own insurance agent, Mr. Brasner. Accordingly, at this time, absent some discovery and without resolving the factual issues surrounding the alleged fraud, the Court will not dismiss Plaintiff's request that Defendants be estopped from seeking a return of the premiums paid in connection with the Berger Policy.

## IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss [DE 30] is **DENIED**. It is further

**ORDERED AND ADJUDGED** that Defendant Wells Fargo Bank, N.A.'s Motion to Stay Discovery Pending Ruling on Motion to Dismiss [DE 31] is **DENIED as moot**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on this 7th day of January, 2011.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF