UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-80804-CIV-COHN/SELTZER

PRUCO LIFE INSURANCE COMPANY,

        Plaintiff,

v.

STEVEN M. BRASNER, individually and as
Principal of Infinity Financial Group, LLC;
MARK A. TARSHIS; INFINITY FINANCIAL
GROUP LLC; WELLS FARGO BANK, N.A.,
as Securities Intermediary; and John Does 1-10,

        Defendants.

_____/

## ORDER DENYING PLAINTIFF PRUCO LIFE INSURANCE COMPANY'S MOTION TO DISMISS WELLS FARGO BANK, N.A.'S COUNTERCLAIM

**THIS CAUSE** is before the Court upon Plaintiff Pruco Life Insurance Company's

Motion to Dismiss Defendant Wells Fargo Bank, N.A.'s Counterclaim [DE 83] ("Motion

to Dismiss").  The Court has considered the Motion to Dismiss, Defendant's Response

[DE 90], Plaintiff's Reply [DE 94], and the record in this case, and is otherwise advised

in the premises.

## I. BACKGROUND

On July 9, 2010, Plaintiff Pruco Life Insurance Company, a subsidiary of The

Prudential Life Insurance Company of America, brought this action against Defendants

Wells Fargo Bank, N.A. ("Wells Fargo"), Infinity Financial Group LLC ("Infinity"),

Infinity's principal, Steven M. Brasner, Infinity's employee, Mark A. Tarshis, and John

Does 1-10.[1]  See Complaint [DE 1].  On February 4, 2011, Wells Fargo filed its Answer, Affirmative Defenses, and Counterclaim [DE 73].  Plaintiff now moves to dismiss the Counterclaim.

## A. The Complaint

The Complaint arises from the alleged fraudulent procurement of a $10 million insurance policy on the life of Arlene Berger ("the Berger Policy").  Plaintiff alleges that in or around February 2006, Mr. Brasner, a life insurance producer, approached Mrs. Berger to participate in a stranger-originated life insurance ("STOLI")[2] policy.  The plan called for the application for a policy on Mrs. Berger's life with Plaintiff, and the alleged concealment from Plaintiff of an intent to sell the policy, and/or an interest in the policy, to one or more investors in the secondary market.  The plan also called for the creation of a trust that would be the owner and the beneficiary of the policy.  However, according to the Complaint, neither the trust nor the Berger Policy was intended for estate liquidity, financial planning, or any other legitimate insurance-related purpose.  Instead,

---

[1]  The Court entered a Default Final Judgment [DE 61] against Defendant Brasner and Defendant Infinity on January 4, 2011, and entered an Order Dismissing Defendant Mark A. Tarshis [DE 136] on June 6, 2011.  Accordingly, Wells Fargo is the only remaining Defendant in this case.

[2]  According to the Complaint, in recent years, a secondary market for life insurance has emerged, in which existing life insurance policies are sold to third-parties who lack an insurable interest in the insured's life.  Though this type of sale can be lawful if the policy is procured for legitimate purposes and there is an insurable interest at the inception of the policy, a STOLI policy that lacks insurable interest at inception and is sought for the purpose of re-sale to stranger-investors on the secondary market is void *ab initio*.  STOLI policy promoters frequently provide false information during the insurance policy application process in order to obtain a policy with a larger face value than would be otherwise warranted, which in turn maximizes the promoter's profit when the policy is sold to investors.

2

the policy was intended to be transferred to a STOLI investor in the secondary market, and the trust was intended to conceal this intention from Plaintiff.

In its Complaint, Plaintiff contends that the application and accompanying documentation contained false information.  Had Plaintiff known the information was false, Plaintiff says it would have declined to issue the Berger Policy.  But because it did not know the information was false, on April 13, 2006, Plaintiff issued the Berger Policy, number V1208044, on Arlene Berger's life in the amount of $10 million.  The Berger Policy was delivered on or about April 28, 2006, and after an initial premium payment was made, the Berger Policy was placed in force on or about May 10, 2006.  One month later, on June 16, 2006, Mr. Brasner and Infinity requested to change the Berger Policy's owner and beneficiary to the Wilmington Trust Company as Trustee of the Arlene Berger 2006 Life Insurance Trust dtd. 6/5/06.  Thereafter, on December 24, 2008, Plaintiff received a second request to change the owner and beneficiary, this time to Wells Fargo as securities intermediary.

Based on these allegations, Plaintiff filed its five-count Complaint against Defendants.  Of the five counts, Plaintiff brings only one count against Wells Fargo: Count I for declaratory judgment that the Berger Policy lacked an insurable interest at inception and is therefore void *ab initio*.  After the Court denied Wells Fargo's Motion to Dismiss Count I [DE 64], Wells Fargo filed its Counterclaim, bringing one count of negligent misrepresentation against Plaintiff.

## B. Counterclaim

According to Counterclaim, Wells Fargo's client, who purchases life insurance policies in the secondary market, relied on Plaintiff's assurances that the Berger Policy was valid, in force, and beyond the contestability period when the client purchased the Berger Policy in December 2008.  Now, over four years after the contestability period has expired and over two years after issuing the Berger Policy, Plaintiff has filed this lawsuit to contest the validity of the Berger Policy.

Wells Fargo states, "If [Plaintiff]'s allegations are correct, [Plaintiff] ***could – and should – have*** discovered these misrepresentations in the exercise of due diligence during the ***two-year*** contestability period."  Resp. at 2.  The Counterclaim alleges that throughout the underwriting process for the Berger Policy, Plaintiff "raised 'internal red flags' as to the possibility that the policy being sought was 'STOLI' . . . or that it would be part of a 'life settlement.'" Countercl. ¶ 11; <u>see also, e.g.</u>, <u>id.</u> ¶ 12 (*"Tech team should probably pay special attention to the Brasner case.  Looks li[ke] there are a lot of unanswered questions*" and ". . . *These are **red flags** of a potential settlement case . . .*"); <u>id.</u> ¶ 15 (*"This is a case we thought was a possible [sic] settlement case back in June . . ."*).  Wells Fargo alleges that Plaintiff repeatedly disregarded these "internal red flags," <u>id.</u> ¶¶ 13-14, 16, and eventually issued the Berger Policy, <u>id.</u> 18.

Wells Fargo further notes that despite the Berger Policy's two-year contestability provision, Plaintiff did not investigate or contest the Berger Policy during the two years after the policy was issued.  <u>See id.</u> ¶¶ 23-24.  However, after the contestability period ended, Plaintiff allegedly supplied verification of coverage and made other

4

representations regarding the Berger Policy to inquiring secondary market brokers and potential purchasers.  Id. ¶¶ 29-30.  On December 10, 2008, Plaintiff provided such verification of coverage to Coventry First LLC ("Coventry First"), who then sold the Berger Policy to Wells Fargo's client in late December 2008.  Id. ¶ 31.  Wells Fargo states that its client relied upon Plaintiff's representations when it purchased the Berger Policy.  Id. ¶ 32.  Further, "[o]n or about December 24, 2008, Wells Fargo, on behalf of its client, submitted to [Plaintiff] a request for change of ownership and beneficiary of the Berger Policy . . . Thus, by letter dated January 9, 2009, [Plaintiff] provided written 'confirmation' to Wells Fargo that its request for a change of ownership and beneficiary of the Berger Policy had been accepted by [Plaintiff]."  Id. ¶ 33.  Since then, Plaintiff has sent invoices for premiums to Wells Fargo on a regular basis, and Wells Fargo has paid those premiums.  Id. ¶¶ 34-35.

Based on these allegations, Wells Fargo's Counterclaim brings a single count against Plaintiff for negligent misrepresentation.  Id. ¶¶ 36-42.  In the instant Motion to Dismiss, Plaintiff seeks to dismiss the Counterclaim pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "While a complaint [or counterclaim] attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citations omitted).  "To survive a motion to dismiss, a complaint [or counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

At this stage in the litigation, the Court must consider the factual allegations in the Counterclaim as true, and accept all reasonable inferences therefrom.  Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).  Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. ANALYSIS

Plaintiff argues that the Court should dismiss Wells Fargo's Counterclaim because (1) Wells Fargo has failed to plead its Counterclaim with particularity, (2) the economic loss rule bars the Counterclaim, and (3) Wells Fargo has failed to allege all of the elements necessary to state a claim for negligent misrepresentation under Florida law.  Court will address each argument in turn.

6

## A. Rule 9 Particularity

Pursuant to Federal Rule of Civil Procedure 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting the fraud or mistake."  Fed. R. Civ. P. 9(b).  Under Eleventh Circuit precedent, "Rule 9(b) is satisfied if the complaint [or counterclaim] sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, . . . (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) [it], . . . (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotations and citations omitted).  Allegations of date, time, or place satisfy the particularity requirement of Rule 9(b), but alternative means are also available to satisfy the rule.  Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1512 (11th Cir. 1988); see also Colonial Penn Ins. Co. v. Value Rent-A-Car, Inc., 814 F. Supp. 1084 (S.D. Fla. 1992) (finding particularity satisfied when plaintiffs provided general time frame, described scheme in detail, and included specific allegations about related correspondence).  The purpose of this heightened pleading requirement is to give the defendant fair notice of the claims brought against it, to protect the defendant from harm to its reputation, and to prevent plaintiffs from filing baseless claims and then attempting to discover unknown wrongs.  See Holguin v. Celebrity Cruises, Inc., Nos. 10-20215-CIV, 10-20545-CIV, 10-20546-CIV, 2010 WL 1837808, at *2 (S.D. Fla. May 4, 2010).

<u>1. Applicability of Rule 9(b) to the</u>
<u>Negligent Misrepresentation Counterclaim</u>

As an initial matter, Wells Fargo argues that Rule 9(b) does not apply to its

negligent misrepresentation Counterclaim because it does not allege a *fraudulent*

misrepresentation.  <u>See</u> Resp. at 10.  Courts within the Eleventh Circuit and outside this

Circuit have reached varying conclusions regarding whether Rule 9(b) applies to

negligent misrepresentation claims.  <u>See</u> <u>Atwater v. Nat'l Football League Players</u>

<u>Ass'n</u>, Case No. 1:06-CV-1510-JEC, 2007 WL 1020848, at *13 (N.D. Ga. March 29,

2007) (discussing various courts' conclusions regarding whether Rule 9(b) applies to

negligent misrepresentation claims).  Some courts have held that Rule 9(b)'s

heightened pleading standard only extends to the cases specifically enumerated in the

rule, while other courts have held that Rule 9(b) applies to any claims that sound in

fraud.  <u>Compare</u> <u>Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.</u>, 115 Fed. App'x

662, 668 (5th Cir. 2004) (requiring only Rule 8(a) pleading for negligent

misrepresentation claim), <u>with</u> <u>Advisor's Capital Inv., Inc. v. Cumberland Cas. & Surety</u>

<u>Co. et al.</u>, Case No. 8:05-cv-404-T, 2006 WL 1428490, at *3 (M.D. Fla. May 22, 2006)

(requiring Rule 9(b) pleading for negligent misrepresentation claim).

Though the Eleventh Circuit itself has not ruled on the question, <u>Atwater</u>, 2007

WL 1020848, at *13, "[h]istorically, in Florida an action for negligent misrepresentation

sounds in fraud rather than negligence," <u>Souran v. Travelers Ins. Co.</u>, 982 F.2d 1487,

1511 (11th Cir. 1993).  Based on this notion, a number of courts in this District have

concluded that Rule 9(b)'s requirements do apply to negligent misrepresentation cases.

<u>See, e.g.</u>, <u>Tradewinds Engine Servs., LLC v. IAE Int'l Aero Engines AG</u>, Case No.

8

10-61027-CIV, 2011 WL 900312, at *7 (S.D. Fla. Jan. 13, 2011)  ("In addition, claims

for negligent misrepresentation sound in fraud, and thus Plaintiff's claims in this area

are subject to the same particularity requirements as its fraud claims under"), adopted

in part by Tradewinds Engine Servs., LLC v. IAE Int'l Aero Engines AG, Case No.

10-61027-CIV, 2011 WL 900310 (S.D. Fla. March 15, 2011); Johnson v. Amerus Life

Ins. Co., Case No. 05-61363, 2006 WL 3826774, at *4 (S.D. Fla. Dec. 27, 2006) ("Rule

9(b) pleading requirements apply to actions involving claims for negligent

misrepresentation"); MeterLogic, Inc. v. Copier Solutions, Inc., 126 F. Supp. 2d 1346,

1370 n.10 (S.D. Fla. 2000) (applying Rule 9(b) analysis to negligent misrepresentation

claim); Harrison Enters., Inc. v. Moran, No. 97-4362-CIV, 1999 WL 1211753, at *3 (S.D.

Fla. Aug. 30, 1999) (noting that Rule 9(b) applies to claims that sound in fraud, and

quoting Souran for the proposition that "in Florida an 'action for negligent

misrepresentation sounds in fraud rather than negligence.'").  This Court agrees that

Rule 9(b) governs negligent misrepresentation claims in Florida because such claims

"sound in fraud rather than negligence."  See Souran, 982 F.2d at 1511.  Therefore,

Wells Fargo's negligent misrepresentation Counterclaim must meet Rule 9(b)'s

heightened pleading standard.

### 2. Rule 9(b) Analysis

The Counterclaim alleges the following:

[Plaintiff] made express representations of material fact concerning the
validity and incontestability of the Berger Policy through [its] verification of
coverage of this Policy and other representations.  In particular, in 2008,
[Plaintiff] represented to Coventry First (who sold the Berger Policy to Wells
Fargo's client) that the Berger Policy was enforceable and that its two-year
contestability period had expired, and then also confirmed Wells Fargo's
requested change of ownership and beneficiary.

Countercl. ¶ 37.  It further alleges, "Before making these representations, [Plaintiff] believed that the Berger Policy was suspect due to numerous 'internal red flags' it had discovered during [the] underwriting process and afterwards."  Id.  Nevertheless, Plaintiff represented that the Berger Policy was valid, and has now turned around and filed the instant lawsuit to contest the validity of that very policy.  Id.  Therefore, Wells Fargo claims Plaintiff "was negligent in repeatedly making these representations . . . [because it] either knew or should have known that its representations were not true (based on what it previously believed to be 'internal red flags' raised during the underwriting process.  Or it made these representations without knowledge of their truth or falsity."  Id. ¶ 39.  Wells Fargo then alleges that Plaintiff intended or should have known that a third-party investor would rely on its representations in connection with purchasing the Berger Policy in the secondary market, that Wells Fargo's client did rely on these representations in purchasing the Berger Policy, and that as a result of this, Wells Fargo has suffered damages including the acquisition costs in purchasing the Berger Policy and the additional premium payments since acquisition.  Id. ¶¶ 40-42.

These allegations, together with the "Factual Background" section of the Counterclaim, set forth what statements Plaintiff made and what statements Plaintiff omitted, when and how the statements were made, the content of the statements and how they misled Wells Fargo's client, and what Plaintiff obtained as a result of the statements or omissions.  Reading the allegations against the facts of this case, and taking the allegations as true for the purpose of the instant Motion to Dismiss, the pleading satisfies Rule 9(b).  See Ziemba, 256 F.3d at 1202 (listing criteria that satisfy Rule 9(b)); see also Durham, 847 F.2d at 1512 (alternatives to allegations of date, time,

or place can satisfy the rule).

Plaintiff's main objection to the particularity with which Wells Fargo pleads is the fact that Wells Fargo has not named its client.  According to Plaintiff, "it goes without saying that a properly pled misrepresentation claim must include the name of the person or entity who received and reasonably relied upon the supposed misrepresentation."  Mot. at 7.  Wells Fargo has alleged that Coventry First was the entity who received the supposed misrepresentation, but it has not named its client who supposedly relied on the misrepresentation.  However, Plaintiff provides no caselaw to support its argument, and nothing in Rule 9(b) requires that a claim include the name of every person involved.  See Fed. R. Civ. P. 9(b).  The Eleventh Circuit has held that even allegations of date, time, or place satisfy the rule.  See Durham., 847 F.2d 1505 at 12.  What is important is that the pleading gives the defendant fair notice of the claims brought against it, see Holguin, 2010 WL 1837808, at *2, and Wells Fargo's pleading provides Plaintiff with such notice here.  Therefore, the Court will not dismiss Wells Fargo's Counterclaim for failure to comply with Rule 9(b)'s particularity requirements.  To the extent Plaintiff seeks to uncover Wells Fargo's client's identify, it may request this information in discovery.

## B. Economic Loss Rule

Under certain circumstances, the economic loss rule precludes recovery for negligence that results only in economic harm.  Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc., 620 So. 2d 1244, 1246 (Fla. 1993).  The rule bars a negligent misrepresentation action "where a defendant has not committed a breach of duty apart from a breach of contract."  Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d

532, 537 (Fla. 2004).  This "prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort."  Id. at 536.

Wells Fargo's Counterclaim seeks purely economic damages, see Countercl. ¶ 42, see also id. at "Wherefore" paragraph, and Wells Fargo is in contractual privity with Plaintiff under the Berger Policy contract, see id. ¶¶ 34-35.   Therefore, under the economic loss rule, the Counterclaim can only survive if it is indeed distinct from a claim for breach of the Berger Policy contract.  See Am. Aviation, Inc., 891 So. 2d at 537.

"To determine whether the economic loss rule bars recovery under fraud, the question is simply this: is the fraud alleged in an act of performance or in a term of the bargain?"  Allen v. Stephan Co., 784 So. 2d 456, 458 (Fla. Dist. Ct. App. 2000) (discussing negligent misrepresentation and fraudulent inducement claims).  In support of dismissal, Plaintiff argues that Wells Fargo's negligent misrepresentation claim is merely a breach of contract claim in disguise, Mot. at 9, but a review of the allegations demonstrates that the claim centers on the bargain to enter into the Berger Policy contract rather than performance of the contractual terms, see Countercl.  Wells Fargo does not suggest that Plaintiff has breached any obligations under the contract.  Like Allen, where the economic loss rule did not bar the claim because "the representation [was] simply made and relied upon in inducing the completion of the transaction [and was therefore] a term of the bargain," Allen, 784 So. 2d at 458, Wells Fargo's allegations center on a representation made and relied upon during the course of Wells Fargo's client purchasing the Berger Policy.  Under such circumstances, the economic

12

loss rule does not bar a negligent misrepresentation claim seeking solely economic damages.  See id.; see also Mobil Oil Corp. v. Dade Cnty. Esoil Mgmt. Co., Inc., 982 F. Supp. 873, 880-81 (S.D. Fla. 1997) (negligent misrepresentation claim "centers upon alleged inducement to enter into a contractual relationship rather than performance of the contracts and, thus, is not barred by the economic loss doctrine"); HTP, Ltd. v. Lineas Aereas Costarricenses, 685 So. 2d 1238, 1239 (Fla. 1997) (finding fraudulent inducement distinct from breach of contract claim, stating, "whether the defendant was truthful during the formation of the contract is unrelated to the events giving rise to the breach of contract.").  Therefore, the economic loss rule does not bar Wells Fargo's Counterclaim.

## C. Elements of a Negligent Misrepresentation Claim

To plead a negligent misrepresentation claim under Florida law, a plaintiff must allege: "(1) [a] misrepresentation of material fact; (2) the representor . . . ma[d]e the representation without knowledge as to its truth or falsity, or . . . under circumstances in which he ought to have known of its falsity; (3) the representor . . . intend[ed] that the misrepresentation induce another to act on it; (4) injury [resulted] to the party acting in justifiable reliance on the misrepresentation."  Souran, 982 F.2d at 1504.  The Motion to Dismiss argues that Wells Fargo has failed to allege the first, third, and fourth elements. The Court will discuss each element in turn.

### 1. Misrepresentation of Material Fact

The first element in a negligent misrepresentation claim requires a misrepresentation of material fact.  Souran, 982 F.2d at 1504.  The Counterclaim alleges that Plaintiff made representations confirming the validity and incontestability of

13

the Berger Policy in the course of its business.  Countercl. ¶¶ 37-38.  It alleges that Plaintiff discovered "numerous 'internal red flags' . . . during the underwriting process and afterwards," id. ¶ 37, based upon which, it "knew or should have known that its representations were not true . . . [o]r it made these representations without knowledge of their truth or falsity," id. ¶ 38.  Though the Response suggests that Plaintiff also withheld information from Wells Fargo's client, see Resp. at 13, the Counterclaim itself is based on the allegation that Plaintiff supplied affirmative information that the Berger Policy was valid, in-force, and incontestable, see Countercl. ¶¶ 37-41, and that this information was false.  Based on these statements, the Counterclaim pleads a misrepresentation of material fact.  To the extent that Plaintiff disputes the underlying facts, such arguments are premature at this stage.

### 2. Intent to Induce Action

The third element in a negligent misrepresentation claim requires that the representor intended for the misrepresentation to induce another to act on it.  Souran, 982 F.2d at 1504.  The Counterclaim alleges that Plaintiff "either intended or expected, through its verification of coverage and other representations, to induce a third-party investor to acquire the Berger Policy in the secondary market."  Countercl. ¶ 40.  Reading the Counterclaim in the light most favorable to Wells Fargo, this allegation, along with the other allegations contained in the Counterclaim, is sufficient to survive dismissal.

Plaintiff nevertheless argues that this allegation is insufficient because the "misrepresentation is alleged to have been directed toward Coventry First only[,] . . . Wells Fargo has done nothing to establish a causal link between this misrepresentation

14

and its client's current ownership of the Policy, other than stating that its client bought

the Policy from Coventry First[,] . . . [and Plaintiff] did not know, and to this day does not

know, the individual or entity that Wells Fargo refers to as its 'client.'" Mot. at 15.  Wells

Fargo responds that pursuant to the Restatement (Second) of Torts § 552,[3] it need not

name its client, nor must it prove that the representation was directed at itself or its

client.  <u>See</u> Resp. at 8-10.

> Section 552 provides as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1), (2).  This section "permits recovery for

pecuniary losses suffered by persons who reasonably rely upon false information

provided by someone acting in the course of their business, profession, and

employment."  <u>Curd v. Mosaic Fertilizer, LLC</u>, 993 So. 2d 1078, 1081 n.2 (Fla. Dist. Ct.

App. 2008); <u>see also</u> <u>City of St. Petersburg v. Total Containment, Inc.</u>, Case No.

06-20953-CIV, 2008 WL 5428179, at *21 (S.D. Fla. 2008).[4]

---

[3]  The Supreme Court of Florida adopted § 552 into Florida law in <u>Gilchrist Timber Co. v. ITT Rayonier, Inc.</u>, 696 So. 2d 334 (Fla. 1997).

[4]  Despite Plaintiff's suggestion that § 552 does not apply to insurers, the section does apply to the instant action.  The parties debate the applicability of § 552 based on <u>Liberty Surplus Insurance Corp., Inc. v. First Indemnity Insurance Services, Inc.</u>, 31 So. 3d 852, 857 (Fla. Dist. Ct. App. 2010).  Wells Fargo reads the case to mean that the section "applies to insurers such as [Plaintiff]," Resp. at 4, while Plaintiff reads the case to preclude application of § 552 to this case because <u>Liberty Surplus</u> only "held that an insurance *broker* can be held liable for negligent misrepresentation for supplying false information to an insurer in pursuit of insurance coverage," Reply at 5.  Both parties

Here, Wells Fargo alleges that Plaintiff supplied false information while acting in the course of its business and in the course of a transaction in which it had a pecuniary interest in that it receives premium payments from the Berger Policy contract.  Wells Fargo also alleges that its client is an intended recipient of such information.  <u>See</u> Countercl. ¶ 40 (Plaintiff "thus either intended or expected, through its verification of coverage and other representations, to induce a third-party investor to acquire the Berger Policy in the secondary market.  This enabled [Plaintiff] to continue to collect premiums under the Policy.").

The fact that Plaintiff did not make its representations directly to Wells Fargo is inapposite.  Under § 552, "it is not necessary that the maker should have any particular person in mind as the intended, or even the probable, recipient of the information." Restatement (Second) of Torts § 552 cmt. h.  "It is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it.  It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons or group."  <u>Id.</u>  Therefore, the allegations that Plaintiff

---

miss the mark.  Section 552 "has been applied in cases where individuals who provide professional services, such as auditors and appraisers, are sued for negligent misrepresentation of information that third parties rely on to their detriment."  <u>Total Containment, Inc.</u>, 2008 WL 5428179, at *21.  The Counterclaim alleges that Plaintiff provides a professional service during the course of which, it provided false information on which Wells Fargo's client relied to its detriment.  Therefore, the section applies to this case.  <u>See also</u> <u>Souran</u>, 982 F.2d at 1505 (applying § 552 to negligent misrepresentation claim based on insurance company's actions).

16

provided verification of coverage to Coventry First with full understanding that Coventry First intended to rely on and relay the information to potential purchasers, such as Wells Fargo's client, along with the fact that Wells Fargo's client did receive this information and relied on it to its detriment, is enough to survive dismissal.

### 3. Injury

The fourth element in a negligent misrepresentation claim requires that the party acting in justifiable reliance on the misrepresentation was injured. Souran, 982 F.2d at 1504. Wells Fargo's Counterclaim alleges that its client "is a *bona fide* third-party purchaser who justifiably relied on [Plaintiff's] verification of coverage of the Berger Policy and other representations concerning the validity and incontestability of he Policy. In fact, had [Plaintiff] not issued its verification of coverage, Wells Fargo's client would not have acquired the Berger Policy." Countercl. ¶ 41. The Counterclaim further alleges that "Wells Fargo's client has suffered significant damages as a result of [Plaintiff's] negligent misrepresentations, including, but not limited to, the significant acquisition costs incurred in acquiring the Berger Policy and the additional premiums of approximately $200,000 paid since acquisition of the Berger Policy." Id. ¶ 42. Together, these statements constitute allegations that Wells Fargo's client, acting in justifiable reliance on Plaintiff's misrepresentations was injured.

Plaintiff argues that Wells Fargo's allegations regarding its injury are insufficient because "[a]ny injury that could possibly be suffered by Wells Fargo and its client is uncertain and has not yet been sustained." Mot. at 16. Specifically, "[a]ny future economic injury to Wells Fargo's client would be contingent on a future event—the Court declaring the Policy void *ab initio*," id., and "[e]ven if this event were to occur,

liability for such injury would not be attributable to [Plaintiff]," id.  Wells Fargo states that it brings its Counterclaim as an "either/or proposition," Resp. at 16, meaning that it "seeks the damages suffered in reliance on [Plaintiff's] misrepresentations and omissions **only** to the extent that this Court declares the Policy void *ab initio*," id.  The Court understands this to mean that should the Policy survive, Wells Fargo will drop its Counterclaim.  This does not change the fact that Wells Fargo has alleged a claim for negligent misrepresentation under Florida law.  To the extent that Plaintiff disputes these facts, these arguments are premature at the motion to dismiss stage. Accordingly, the Court finds that Wells Fargo has stated a Counterclaim for negligent misrepresentation.

## IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff Pruco Life Insurance Company's Motion to Dismiss Defendant Wells Fargo Bank, N.A.'s Counterclaim [DE 83] is **DENIED**.  Plaintiff shall file its Answer to Wells Fargo's Counterclaim [DE 73] by no later than **July 18, 2011**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on this 7th day of July, 2011.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF

18