UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:10-CIV-80804-COHN/SELTZER

PRUCO LIFE INSURANCE COMPANY,
    Plaintiff,

vs.

STEVEN M. BRASNER, individually and
as Principal of Infinity Financial Group, LLC;
MARK A. TARSHIS; INFINITY FINANCIAL
GROUP LLC; WELLS FARGO BANK, N.A.,
as Securities Intermediary; and John Does 1-10,

    Defendants.
_____/

**STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF MOTION OF DEFENDANT
WELLS FARGO BANK, N.A., AS SECURITIES INTERMEDIARY,
FOR SUMMARY FINAL JUDGMENT**

Defendant Wells Fargo Bank, N.A., as Securities Intermediary ("Wells Fargo"), pursuant to Rule 7.5 of the Local Rules of the United States District Court for the Southern District of Florida and in support of the Motion of Defendant Wells Fargo for Summary Final Judgment and Incorporated Memorandum of Law dated August 19, 2011, sets forth the following material facts as to which there exists no genuine issue to be tried:

**The Policy Owner-Insured (Arlene Berger) and Policy Beneficiary (Richard Berger)**

1.    Arlene Berger and her husband Richard Berger retired and moved to Florida in 1993. (Dep. of Arlene Berger conducted Feb. 1, 2011 ("A. Berger Dep.") 8 (Dec. Ex. A).[1] Since then, they have lived in the same house in Delray Beach, Florida. (*Id.*)  Mr. and Mrs.

---

[1]    Filed concurrently with this Statement is the Declaration of Juan J. Farach dated August 19, 2011 ("Dec."), which attaches as exhibits the deposition excerpts and other documents referenced in this Statement. For the Court's convenience, an initial reference will be made to the Declaration exhibit when first cited in this Statement (*e.g.*, A. Berger Dep. 8 (Dec. Ex. A)).

Berger have been married for over 60 years, and they have three grown children. (*Id*. 11; Dep. of Richard Berger conducted February 2, 2011 ("R. Berger Dep.") 14 (Dec. Ex. C)).

2.  Mrs. Berger was born in 1933, and Mr. Berger was born in 1929. (A. Berger Dep. 10; R. Berger Dep. 13; Dec. Ex. L at PRU-00054). Mr. and Mrs. Berger are both in good health, and they each have a Florida driver's license. (A. Berger Dep. 54-55; Dec. Ex. J at WIS-00002-00003, WIS-00031-00032). In their retirement, the Bergers often attend financial seminars geared toward retirees. (A. Berger Dep. 42-43, 46-49; R. Berger Dep. 38-39). During one of these seminars, the Bergers learned that older people, if they are in good health, could obtain some form of "free" life insurance. (A. Berger Dep. 46-49, 54-55, 58, R. Berger Dep. 38-39, 56-57).

3.  Starting in 2003, the Bergers hired accountant Mark Tarshis (a former defendant in this action) to prepare their federal income tax returns. (A. Berger Dep. 12-13; R. Berger Dep. 27). During one of their visits to Mr. Tarshis in 2005, the Bergers mentioned to him that they would like to know more about the "free" life insurance they had heard about in the financial seminars they previously attended. (A. Berger Dep. 46-49; R. Berger Dep. 39).

4.  Mr. Tarshis responded that he was not knowledgeable about insurance but took the Bergers down the hall to the office of former defendant Steven Brasner, who was a Florida licensed insurance broker/agent, and at the time shared office space with Mr. Tarshis. (A. Berger Dep. 42-49; Cont. Dep. of Arlene Berger conducted February 2, 2011 ("A. Berger Cont. Dep.") 55 (Dec. Ex. B); R. Berger Dep. 38-39, 56-57).

### Pruco-Appointed Broker Steven Brasner

5.  At the time he first met the Bergers, Mr. Brasner was an appointed broker for The Prudential Life Insurance Company of America (and its affiliate Pruco) in the State of Florida,

2

having entered into a brokerage agreement with Pruco (and its affiliates) in April 2003, which agreement Pruco renewed in June 2005.  (2003 Broker Agreement (Dec. Ex. G); 2005 Broker Agreement (Dec. Ex. H).

6.  Under the 2005 renewed brokerage agreement, Pruco appointed Mr. Brasner as its non-exclusive insurance agent, and expressly granted him the authority to solicit and process applications for life insurance from Pruco on the lives of Florida residents.  (Dec. Ex. H) Section 2 of the renewed brokerage agreement (entitled "Authority"), provided as follows:

> This Agreement authorizes the broker to:
>
> (a)  solicit, procure and submit applications for Policies of the Company, provided the Broker is properly state licensed and state appointed to do so, as required by the Company's Licensing, Appointment and registration Policy and the Company's Long Term Care insurance Licensing, Appointment and Registration Policy . . . ;
>
> (b)  ensure that all Life Insurance policy and Annuity contract placement requirements are satisfied and deliver Policies to policyowners and ensure that the Long Term Care insurance Delivery requirements have been complied with; and
>
> (c)  assist policyowners in obtaining prompt service from the Company with respect to the administration of Policies, and in maintaining their coverage as long as that coverage is in the interest of the policyholder.

(Dec. Ex. H at 1).

**Arlene Berger Seeks Life Insurance Naming Her Husband Richard Berger As Beneficiary**

7.  Mrs. Berger initiated the request to seek "free" life insurance on her own life naming her husband as the beneficiary under the policy.  (A. Berger Dep. 42-49).  Through her accountant Mark Tarshis, Mrs. Berger sought out Mr. Brasner to help her obtain "free" life insurance.  (*Id*.)  Mr. Brasner did not approach or solicit her.  At their first meeting, the Bergers expressed to Mr. Brasner an interest in obtaining the "free" life insurance they had heard about.

3

(A. Berger Dep. 46-47, 54-56, 239-240). Mr. Brasner responded by telling them he would look into it and get back to them. (A. Berger Dep. 46, 53; R. Berger Dep. 57).

8.   A few weeks later, Mr. Brasner contacted the Bergers to let them know that he might indeed be able to help them get the insurance, and they went to his office to initiate the application process. (A. Berger Dep. 56; R. Berger Dep. 58, 62-63).

### The Applications For Insurance On The Life of Mrs. Berger

9.   Mrs. Berger requested Mr. Brasner to apply for and obtain life insurance on her life. (A. Berger Dep. 202-03, 240; A. Berger Cont. Dep. 14-17). Mrs. Berger intended that either her husband or her three grown children benefit from any insurance policy Mr. Brasner was able to obtain on her life. (A. Berger Dep. 58, 72, 76; A. Berger Cont. Dep. 14-17).

10.  As a result, over the ensuing months, Mr. Brasner and his assistant Patricia Wagner asked the Bergers to visit Mr. Brasner's office to sign numerous documents, including applications for life insurance policies. (A. Berger Dep. 63, 162; R. Berger Dep. 154, 160.) Although Mrs. Berger did not read these documents, Mrs. Berger and her husband signed these documents where the "sign here" flags attached to the applications and other documents indicated that they should. (A. Berger Dep. 62, 64, 93, 102, 112, 164, 230-32; A. Berger Cont. Dep. 7-8; R. Berger Dep. 156-157). Mrs. Berger voluntarily took the physical examination required by Pruco to obtain a policy insuring her life. (A. Berger Dep. 119).

11.  On July 15, 2005, Mr. Brasner submitted Mrs. Berger's application to Pruco (through Pruco's Broker General Agent (Life Brokerage Equity Group, Inc. ("LBEG")) for a $10 million policy of insurance on the life of Mrs. Berger for the benefit of Mr. Berger. (Dec. Ex. I). Because Pruco did not timely receive all of the information it required in support of Mrs.

4

Berger's 2005 application, the policy was not issued at that time. (Dep. of Gloria Flattum conducted on August 10, 2011 at 41-43 (Dec. Ex. D)).

12.     On February 21, 2006, Brasner submitted Mrs. Berger's second and more complete application to Pruco through Pruco's Broker General Agent (LBEG). (Dec. Ex. L). LBEG reviewed this second application on behalf of Pruco and filled in certain supplemental information provided by Mr. Brasner that was missing from the application before forwarding it to Pruco. (Dep. of Joann Godin conducted July 20, 2011 ("Godin Dep.") 39-40, 107-08, 209-11 (Dec. Ex. E)). Significantly, this application (which is a Pruco form) contains the following certification and affirmation: "[e]xcept for failure to pay premium, [Pruco] will not contest the validity of this policy or change request after it has been in force during the insured's lifetime for two years from the date it takes effect." (Dec. Ex. L at PRU-00057).

13.     Mrs. Berger's applications accurately set forth her date of birth, home address, social security number and other information requested by Pruco. The applications also accurately set forth Mrs. Berger's good health and other medical information, and Mrs. Berger completed a medical examination in support of the applications. (A. Berger Dep. 54-55, 119). While the Bergers own their own home and have other significant assets (including annuities, money market account, and certificates of deposit), a supplementary client information form submitted by Mr. Brasner overstated the actual value of the Bergers' assets, as well as the Bergers' unearned annual income. (A. Berger Dep. 20-21, 26-38, 85-90, 103-09).

### No Pre-Existing Agreement To Transfer The Policy

14.     At or prior to inception of the Policy, Mrs. Berger did not enter into any agreement to sell or otherwise transfer her Policy to anyone, let alone any specific subsequent or secondary owner. (A. Berger Dep. 58, 72, 76, 183, 202-05, 240; A. Berger Cont. Dep. 14-17,

29). To the contrary, Mrs. Berger believed that she was the owner of the policy at inception and that her husband would be paid the death benefit by the insurer if she were to die before the two or three years of "free insurance" were up (*i.e.*, Mrs. Berger would be the owner of life insurance with her husband as beneficiary without having to pay out of pocket for premiums during this 2-3 year time period). (*Id.*) Mrs. Berger intended the life insurance policy to benefit her husband Richard Berger. (A. Berger Dep. 58, 72, 76; A. Berger Cont. Dep. 14-17). As a result, Mrs. Berger's policy application, as well as the Policy itself issued by Pruco, named Richard Berger as the Policy beneficiary according to Mrs. Berger's intention and wishes. (Policy (Dec. Ex. F) at 3; 2006 Application (Dec. Ex. L) at PRU-00055).

15. Mrs. Berger never received any money from Mr. Brasner or anyone else in connection with the Policy. (A. Berger Dep. 168, 177.)

### Pruco Issues A Policy On The Life Of Mrs. Berger With Mr. Berger As Beneficiary

16. In April 2006, Pruco issued a $10 million policy (V1 208 044) on the life of Mrs. Berger as its owner for the benefit of her husband Richard Berger as the sole beneficiary (the "Policy"). (Dec. Ex. F at 3). The Contract Date of the Policy was April 13, 2006, but the Policy was put in force on May 10, 2006, after Pruco received the initial premium payment of $81, 871.75. (Dec. Ex. F at 3; Compl. ¶ 50).

### Policy Allows Changes To Owner And Beneficiary Of The Policy

17. The Policy itself recognizes that the Owner and/or Beneficiary of the Policy may change from time to time. In particular, the Policy provides as follows:

> **OWNERSHIP**
>
> Unless a different owner is named in the application, the owner of the contract is the Insured. If a different owner is named, we will show that owner in an endorsement to the contract. This ownership arrangement will remain in effect unless you ask us change it.

> **You may change the ownership of the contract** by sending us a request in a form that meets our needs. We may ask you to send us the contract to be endorsed. If we receive your request in a form that meets our needs, and the contract if we ask for it, we will file and record the change, and it will take effect as of the date you signed the request.
>
> **BENEFICIARY**
>
> **You may designate or change a beneficiary** by sending us a request in a form that meets our needs. We may ask you to send us the contract to be endorsed. If we receive your request, and the contract if we ask for it, we will file and record the change and it will take effect as of the date you signed the request.

(Dec. Ex. F at 5, 9 (emphasis added)).

### Post-Inception Request to Change the Owner of the Policy To Arlene Berger Trust And Acceptance By Pruco

18. On June 5, 2006, the Arlene Berger 2006 Life Insurance Trust (the "Arlene Berger Trust") was created through the execution of a Trust Agreement signed by Arlene Berger as Settlor, Wilmington Trust Company ("Wilmington Trust") as Trustee, and Richard Berger as Co-Trustee and sole Beneficial Owner. (Trust Agreement (Dec. Ex. M); A. Berger Dep. 144-45, 230-32.) While Mrs. Berger does not recall authorizing the creation of the Arlene Berger Trust, Mrs. Berger confirmed that she signed the documents creating this Trust. (A. Berger Dep. 135-36, 144-47, 167).

19. Mr. and Mrs. Berger also executed with Wilmington Trust a Supplement to Trust Agreement dated June 6, 2006, which, among other things, created a sub-trust of the Arlene Berger Trust to borrow funds from LaSalle Bank, National Association ("LaSalle Bank") to finance the payment of premiums under the Policy. (Supplement to Trust Agreement (Dec. Ex. N); A. Berger Dep. 148-50). This Supplement provided for Wilmington Trust, as Trustee, to act solely at the direction of Mrs. Berger, as Settlor, and further allowed Mrs. Berger, as Settlor, to

retain control over the Policy. (Dec. Ex. N at 4-6 (WT-0069-0071)). Likewise, under the Supplement, Mr. Berger continued to serve as Co-Trustee, and he remained the sole Beneficial Owner of the Arlene Berger Trust (and therefore the sole ultimate beneficiary of the Policy, subject to the premium finance loan). (Dec. Ex. N at 11 (WT-0076)).

20. Consistent with the change of owner and beneficiary provisions in the Policy, on June 16, 2006, a Request To Change Beneficiary/Ownership form, signed by Mrs. Berger, was forwarded to Pruco requesting to change the owner and beneficiary of the Policy to Wilmington Trust Company, as Trustee for the Arlene Berger Trust. (Dec. Ex. P; A. Berger Dep. 199-201).

21. By letter dated June 30, 2006, Pruco provided written confirmation (and reflected in its records) its acceptance of the change of ownership from Mrs. Berger to Wilmington Trust Company, as Trustee of the Arlene Berger Trust. (Dec. Ex. Q).

**Premium Financing From Lender LaSalle Bank, N.A.**

22. The Bergers did not intend to pay any policy premiums or otherwise come out of pocket in association with the policy's issuance or maintenance. (A. Berger Dep. 59-60, 105-06; A. Berger Cont. Dep. 17; R. Berger Dep. 69.) Mrs. Berger also understood that she would have "free" insurance for approximately two to three years at which time she would have the option to either pay back the loan and begin paying for the policy premiums themselves, or relinquish the policy to the lender. (A. Berger Dep. 72, 95-96; R. Berger Dep. 69-70, 113, 118.)

23. To seek to obtain premium financing, Mrs. Berger initially signed a loan application and other documents (including a power of attorney in favor of LaSalle Bank's appointed Servicing Agent (Coventry Capital I LLC) to seek premium financing from LaSalle Bank. (Dec. Ex. K). In connection with the premium financing being sought from LaSalle Bank, funds were advanced for the initial premium payment under the Policy of $81,871.75.

8

24. After the creation of the Arlene Berger Trust (and its Premium Finance Sub-Trust), standard form LaSalle loan documents for the premium financing were executed by LaSalle Bank, and the Arlene Berger Trust, including a premium financing Note and Security Agreement, Consent to Appointment of Agent, and Settlor Non-Recourse Security Agreement (the "Premium Financing Loan"). (Dec. Ex. O; Dec. Ex. R). The Premium Financing Loan, which closed on July 17, 2006, had a Scheduled Maturity Date of September 17, 2008. (Dec. Ex. R at Sch. A (WT-0058)).

25. The Premium Financing Loan (which is governed by Illinois law) provided that LaSalle Bank could exercise rights and/or remedies with respect to the Policy in the event that LaSalle Bank foreclosed upon the Policy following default on the Loan, or the Arlene Berger Trust (at the direction of Mrs. Berger, as Settlor) elected to relinquish the Policy to the lender. (Dec. Ex. R at 4-5 (WT-0054-0055)). The Premium Financing Loan was nonrecourse to the Arlene Berger Trust and the Bergers (other than personal liability for default interest) and the only asset securing the Loan was the Policy itself. (*Id*. at 3 (WT-0053)).

26. The next day (July 18, 2006), LaSalle Bank, pursuant to the Premium Financing Loan, made a $331,077.29 premium payment to Pruco, which sum included advanced premium payments for a period of time in excess of two years. (Dec. Ex. X (PRU-00570). LaSalle Bank wired this advance premium payment to Pruco. (*Id*.)

**The Policy's Incontestability Clause And Expiration Of Contestability Period**

27. The Policy contained the following "incontestability" clause:

> Except as we state in the next sentence, ***we will not contest this contract*** after it has been in force during the Insured's lifetime for ***two years from the issue date***. The exceptions are: (1) non-payment of enough premium to pay the required charges; and (2) any change in the contract that requires our approval and that would increase our liability. For any such

9

>change, we will not contest the change after it has been in effect for two years during the lifetime of the Insured.

(Dec. Ex. F. at 14 (emphasis added)). Similarly, Pruco's life insurance application form (which was submitted in connection with this Policy) contains the following certification and affirmation: "[e]xcept for failure to pay premium, [Pruco] will not contest the validity of this policy or change request after it has been in force during the insured's lifetime for two years from the date it takes effect." (Dec. Ex. L at PRU-00057).

28. On May 10, 2008 (*i.e.*, 2 years after the in force date of the Policy), the 2-year contestability period expired.

### Mrs. Berger Elects To Relinquish Policy To LaSalle Bank Just Prior To Maturity

29. Over two years later (*i.e.*, two years after Policy inception), on or about September 16, 2008 and prior to the September 17, 2008 maturity date of the Premium Finance Loan, Wilmington Trust, as Trustee, and Mrs. Berger, as Settlor, executed a Second Supplement to the Arlene Berger Trust, and Richard Berger resigned as Co-Trustee of the Arlene Berger Trust. (Dec. Ex. S (Lava-00668-670)

30. On the same day (September 16, 2008) and prior to the September 17, 2008 maturity date, Mrs. Berger, as Settlor of the Arlene Berger Trust, signed an Irrevocable Settlor Instruction Letter, directing the Trustee of the Arlene Berger Trust to fully relinquish the Policy to LaSalle Bank in full satisfaction of the Premium Financing Loan. (Dec. Ex. S (Lava-00663-670; *see* Dec. Ex. AA (Declaration of Amy Welsh dated Jan. 11, 2011, at 3, ¶10)).

31. The next day, by letter dated September 17, 2008, LaSalle Bank confirmed to the Arlene Berger Trust that the Policy had been relinquished to it (effective as of the September 17, 2008 maturity date), and that the obligations of the Premium Finance Loan had been satisfied in full. (Dec. Ex. T (Lava-00566)).

**After Relinquishment to LaSalle Bank, The Policy Is Sold on the
Secondary Market  And Pruco Accepts Change Of Owner/Beneficiary**

32.     As of September 17, 2008, LaSalle Bank owned the Policy because Wilmington Trust Company, as Trustee of the Arlene Berger Trust (at the direction of Mrs. Berger) had relinquished it to LaSalle Bank in satisfaction of the Premium Finance Loan.  (Dec. Ex. T).

33.     On or about December 10, 2008, Pruco provided a verbal verification of coverage of the Policy to Coventry First LLC ("Coventry First"), a licensed life settlement provider.  (Dec. Ex. U (WF-0265)).  In doing so, Pruco confirmed that the Policy was in full force and effect and "in grace" (and thus enforceable), and also confirmed that the two-year contestability period had expired and, therefore, that the Policy was no longer contestable.

34.     Thereafter, in December 2008, Coventry First purchased the relinquished Policy from LaSalle Bank for $560,000.   (Deposition of Lavastone Capital LLC's Rule 30(b)(6) deposition (Connie Yilmaz) conducted August 4, 2011 ("Lavastone Dep.") at 328-29 (Dec. Ex. Y)).  Coventry First then allocated the Policy to its securities account at Wells Fargo Bank, N.A. Shortly thereafter, in reliance on Pruco's verification of coverage and other representations, Lavastone Capital LLC ("Lavastone") purchased the Policy from Coventry First for an amount in excess of $1 million.  (Lavastone Dep. 149-53).   Until and subject to confirmation and acceptance by Pruco of the change of ownership and beneficiary, this transaction could not be finalized and the funds deposited in escrow for this transaction could not be released.  (Lavastone Dep. at 149-52; Deposition of Wells Fargo's Rule 30(b)(6) deposition (Charles Brehm) conducted June 29, 2011 ("Wells Fargo Dep.") at 7-8, 21, 209-10 (Dec. Ex. Z)).

35.     Consistent with the change of owner and beneficiary provisions in the Policy, Wells Fargo Bank, N.A., as Securities Intermediary, submitted a change of ownership and beneficiary request form to Pruco containing a request to change the Policy's owner and

beneficiary to Wells Fargo Bank, N.A., as Securities Intermediary. (Dec. Ex. V (WF-0310-321)). As a result, on December 24, 2008, Pruco received such change of ownership and beneficiary request form. (*Id.*)

36. Pruco accepted this requested change of owner and beneficiary. By letter dated January 9, 2009, Pruco provided written confirmation to Wells Fargo, as Securities Intermediary, that Pruco had accepted (and reflected in its records) the request for a change of ownership and beneficiary. (Dec. Ex. W (PRU-00350-0353)). Upon receipt of Pruco's confirmation, funds deposited in escrow for Lavastone's acquisition of the Policy were released, and Lavastone allocated the Policy to its securities account at Wells Fargo Bank, N.A., as Securities Intermediary. (Lavastone Dep. at 149-52; Wells Fargo Dep. at 209-10). The Policy is currently held by Wells Fargo Bank, N.A., as Securities Intermediary, on behalf of Lavastone. (Lavastone Dep. at 149-50; Wells Fargo Dep. at 7-8, 21).

**Pruco Has Received And Accepted In Excess Of $620,000 In Premiums Since Inception**

37. Between inception and December 2008, Pruco received and accepted premiums owed under the Policy totaling approximately $525,000. (Dec. Ex. X (PRU-00570). Since the change of ownership and beneficiary confirmed and accepted by Pruco in January 2009, additional premiums under the Policy totaling approximately $230,000 (*i.e.*, approximately $35,000 every quarter) have been paid and/or tendered to Pruco by Wells Fargo (on behalf of Lavastone). (Dec. Ex. X; *see* Wells Fargo Dep. at 22, 186-87). In particular, since January 2009, Wells Fargo (on behalf of Lavastone) has paid approximately $230,000 in premiums under the Policy (which includes approximately $134,000 deposited by Wells Fargo into the Court Registry).

38. As a result, since inception of the Policy, Pruco has received and accepted premiums in excess of $620,000 in connection with the Policy. (Dec. Ex. X).

### No Role By Lavastone Or Wells Fargo With Procurement Of Policy

39. Neither Lavastone nor Wells Fargo played any role whatsoever with regard to the procurement of the Policy. (Lavastone Dep. at 242; Wells Fargo Dep. at 134).

Dated: August 19, 2011
    Miami, Florida

Respectfully submitted,

/s John K. Shubin_____
John K. Shubin (Florida Bar Number: 771899)
jshubin@shubinbass.com
Juan J. Farach (Florida Bar Number: 957704)
jfarach@shubinbass.com
David R. Hazouri (Florida Bar Number: 142387)
dhazouri@shubinbass.com
SHUBIN & BASS, P.A.
46 S.W. 1st Street, Third Floor
Miami, Florida 33130
Telephone: (305)381.6060
Facsimile: (305)381.9457
*Attorneys for Defendant, Wells Fargo*

CASE NO. 10-CIV-80804-COHN/SELTZER

## CERTIFICATE OF SERVICE

      I hereby certify that on August 19, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all Counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                                                           ____s/ Juan J. Farach_____  
                                                                                              Juan J. Farach, Esq.

CASE NO. 10-CIV-80804-COHN/SELTZER

**SERVICE LIST**
**Pruco Life Ins. Co v. Brasner, et al.**
**Case No. 10-CV-80804 Cohn/Seltzer**
**United States District Court, Southern District of Florida**

Wendy L. Furman, Esq.
wfurman@pettfurman.com
PETT FURMAN, PL
2101 N.W. Corporate Blvd., Suite 316
Boca Raton, Florida 33431
Tel. (561) 994-4311
Fax (561) 982-8985
*Attorneys for Plaintiff Pruco Life Insurance Company*
Service by CM/ECF

Stephen A. Serfass, Esq.
Stephen.serfass@dbr.com
Michael D. Rafalko, Esq.
Michael.rafalko@dbr.com
DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
Tel. (215) 988-2700
Of Counsel/Pro Hac Vice
*Attorneys for Plaintiff Pruco Life Insurance Company*
Service by CM/ECF