UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80804-CIV-COHN/SELTZER

PRUCO LIFE INSURANCE COMPANY,

        Plaintiff,

vs.


STEVEN BRASNER, individually and as
principal of Infinity Financial Group, LLC,
MARK A. TARSHIS, Infinity Financial Group,
LLC, WELLS FARGO BANK, N.A., as Securities
Intermediary, and JOHN DOES 1-10,

        Defendants.

_____/

<u>REPORT AND RECOMMENDATION</u>

THIS CAUSE has been referred to the undersigned Magistrate Judge by the District Court for a determination of whether Plaintiff Pruco Life Insurance Company's Special Investigative Unit Report "constitutes a privileged document, which is improperly before the [District] Court" in considering Defendant Wells Fargo Bank, N.A.'s Motion for Relief from Summary Judgment pursuant to Federal Rule of Civil Procedure 60(b).  Order of Reference (DE 273).

In April 2010, Elizabeth McCrohan, Pruco's Senior Corporate Counsel, directed its Special Investigative Unit to investigate the procurement by Steven Brasner[1] of a $10,000,000 policy insuring the life of Arlene Berger.  McCrohan Decl. ¶ 2 (DE 244-1).  Kay Ferrian, an associate manager of the Unit, did investigate the matter and concluded that

_____

[1] Defendant Steven Brasner was an insurance broker associated with Pruco; Pruco terminated his association in 2007 for matters unrelated to this action.

the Berger policy was an illegal stranger-oriented life insurance ("STOLI") policy.  On June 8, 2010, Ferrian prepared the document at issue – a six-page Special Investigation Unit Report ("SIU Report") regarding Brasner and the Berger policy.  See Report attached to David R. Hazouri Decl. (DE 253-1).  On October 29, 2010, Pruco sent the SIU Report to Roy Friedrich of the Florida Department of Financial Services, Division of Insurance Fraud ("FDFS").

On both January 12, 2011, and October 21, 2011 (before the District Court granted summary judgment in favor of Pruco), Wells Fargo's counsel requested a copy of the SIU Report from the FDFS pursuant to Florida's Public Records Act.[2]  Hazouri Decl. ¶ 4.  The FDFS, however, refused to produce the document on those occasions, claiming that the document was exempt from production because it was part of an open investigation into Brasner and the Berger Policy that had begun in 2010.  Id. ¶ 5.  The FDFS did, however, provide Wells Fargo with a copy of the SIU Report on December 22, 2011 (after the District Court had entered Final Judgment).  Id. ¶ 4.  Thereafter, Wells Fargo filed the pending Motion for Relief from Summary Final Judgment Pursuant to Rule 60(b), proffering the SIU Report for the Court's consideration as newly discovered evidence that serves as the basis

---

[2]  Wells Fargo also had attempted to obtain the SIU Report from Pruco during the course of this proceeding; on October 27, 2011, it filed a Motion to Compel Production of Report Withheld under Claim of Privilege (DE 242).  On November 8, 2011, Pruco responded thereto (DE 244).  Before the motion to compel was ripe for decision, however, on November 14, 2011, the District Court granted summary judgment and entered a final judgment in Pruco's favor; it also denied all pending motions as moot. (DE 245).  In its motion to compel, Wells Fargo raised the same arguments that are now before the Court. And in responding to Wells Fargo's pending Rule 60 motion, Pruco has incorporated its response to the motion to compel.  In making its determination as to the confidentiality of the SIU Report, the undersigned, therefore, has considered the parties' arguments raised in connection with both the motion to compel and the pending Rule 60 motion.

of the Motion.

Pruco responds that the District Court should not consider the SIU Report in deciding Wells Fargo's Rule 60(b) motion because the document is confidential.  More specifically, Pruco contends that the SIU Report was prepared in anticipation of litigation and, therefore, is protected by the attorney work product doctrine.[3]  Wells Fargo does not dispute that the Report is work product;[4] rather, it argues that Pruco has waived whatever work product protection the Report may have had by voluntarily providing it to the FDFS. Work product protection, however, is not automatically waived by disclosure to a third party.  Benhia v. Shapiro, 176 F.R.D. 277, 279 (N.D. Ill. 1997) ("Unlike the attorney-client privilege, mere disclosure to a third party is insufficient to waive work-product protection."); Samuels v. Mitchell, 155 F.R.D. 195, 200 (N.D. Cal. 1994) ("The work product privilege is not automatically waived by any disclosure to third persons."); United States v. American Tel.  and Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("[W]hile the mere showing of a voluntary disclosure to third persons will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege.").

---

[3]  The attorney work product doctrine, first articulated in Hickman v. Taylor, 329 U.S. 495 (1947), has been codified in the Federal Rules of Civil Procedure.  Rule 26(b)(3) provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorneys, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A).  "Such materials, however, are not protected if they are assembled in the ordinary course of business or other non-litigation purposes."  Developers Surety and Indem. Co. v. Harding Village, Ltd., No. 06-21267-Civ, 2007 WL 2021939, at *2 (S.D. Fla. July 11, 2007) (Brown, M.J.).

[4]  In its prior motion to compel, Wells Fargo argued that the SIU Report was not protected work product because Pruco had prepared it in the ordinary course of business and not in anticipation of litigation.  Wells Fargo, however, has not raised this argument in its Rule 60(b) motion.

Rather, "work-product protection is waived when protected materials are 'disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information.'" Stern v. O'Quinn, 253 F.R.D. 663, 681 (S.D. Fla. 2008) (Rosenbaum, M.J.) (quoting Niagara Mohawk Power Corp. v. Stone & Webster Eng'r Corp., 125 F.R.D. 578, 587 (N.D.N.Y 1989)); see also Bank Brussels Lambert v. Chase Manhattan Bank N.A., No. 93 Civ. 5298 LMM RLE, 1996 WL 944011, at *3 (S.D.N.Y Dec. 19, 1996) ("Work product immunity is waived 'only if the party has voluntarily disclosed the work product in such a manner that is likely to be revealed to his adversary.'") (quoting Bowne of New York City v. AmBase Corp., 150 F.R.D. 465, 479 (S.D.N.Y. 1993)); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure, § 2024 at 369 (2d ed. 1994) ("disclosure of a document to third persons does not waive the work-product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information").

Pruco first argues that it has not waived work product protection because it did not voluntarily disclose the SIU Report to the FDFS.[5]  According to Pruco, its disclosure was

---

[5] Pruco also argues that the attorney work product protection was not waived by the FDFS's disclosure (without Pruco's permission) of the SIU Report to Wells Fargo, citing Proctor & Gamble Co. v. Bankers Trust Co., 909 F. Supp. 525, 527-28 (S.D. Ohio 1995) ("The governing rule is that unauthorized disclosure of privileged information by a third party does not constitute waiver of a privilege."). Wells Fargo, however, is not arguing that the FDFS's production of the SIU Report (pursuant to the Public Records Act) waived work production protection; it argues that Pruco's own disclosure to the FDFS waived the protection.

required by the mandatory fraud reporting requirements of Fla. Stat. § 626.989.[6]   In support, Pruco quotes from Moore's Federal Rules Pamphlet:

> The doctrine of waiver of privilege through disclosure is premised on voluntary disclosure, so that if a party is *compelled* to disclose privileged information, no waiver can be implied from the disclosure.  For example, if the government compels a party to turn over documents any attorney-client or work product protection in those documents is nevertheless retained despite the disclosure.

I-V Moore's Federal Rules Pamphlet § 26.6[3][a] (emphasis in original) (citing 6 Moore's Federal Practice §§ 26.47[5], 26.49[5], Mathew Bender 3d ed.).

Wells Fargo counters that Pruco was not required to provide its work product to the FDFS pursuant to Fla. Stat. § 626.989(b); hence, its disclosure of the SIU Report was voluntary – not mandatory.  Wells Fargo contends that Pruco did not send the Report to the FDFS until five months after it had been completed, five months after Pruco had already informed the FDFS of Pruco's suspicions about fraud in the procurement of the Berger Policy, and four months after it had commenced this litigation against Brasner for fraud.  In support, Wells Fargo submits a series of emails (Conf. Docs 51 and 52, filed under seal at DE 260-1).  These emails and other record evidence illustrate the sequence

---

[6] Fla. Stat. § 626.989 requires an insurer to disclose any knowledge or suspicions of fraudulent insurance acts.  The statute provides in pertinent part:

> [A]ny insurer . . . having knowledge or who believes that a fraudulent insurance act . . . is being or has been committed shall send to the Division of Insurance Fraud a report or information pertinent to such knowledge or belief and any such additional information relative thereto as the department may require.

Fla. Stat. § 626.989(b).

of events:

- On June 8, 2010, Pruco employee Kay Ferrian completed the SIU Report. January 24, 2012 Ferrian Aff. ¶ 11 (DE 259-1).

- On June 21, 2010, Pruco submitted to the FDFS a three-page standard fraud referral form (not the SIU Report); Pruco employee Toni Mortenson was identified as the "Reporting Individual" on behalf of Pruco.   Report [of] Suspected Fraud (DE 260-1).

- On June 21, 2010, Captain Vance Atkins of the FDFS acknowledged the receipt of Pruco's fraud referral form, stating that "[i]f additional information is needed, we will contact you directly."  June 21, 2010 email from Atkins to Mortenson (DE 260-1).

- On July 9, 2010, Pruco filed the instant action for fraud against Brasner and seeking to void the Berger Policy as to Wells Fargo.  Complaint (DE 1).

- On October 26, 2010, an FDFS investigator (Roy Friedrich) notified Ferrian (by email) that the Department had opened an investigation of the Berger Policy; he inquired whether Pruco "wish[ed] to pursue this matter or was this information provided to the Department for information purposes only?".  Friedrich also informed Pruco that if it wanted to pursue the investigation, the Department would "require a notarized statement regarding the circumstances of the transaction."  October 26, 2010 email from Friedrich to Pruco employee Suzanne Jones, which was forwarded to Kay Ferrian (DE 260-1).

- On October 29, 2010, Ferrian responded (by email) to Investigator Friedrich that Pruco did want to pursue the matter and informed Friedrich that she had already provided a notarized affidavit to Detective Anne Erwin of his department.  Ferrian requested that Friedrich advise her "exactly what you need."  October 29, 2010 email from Ferrian to Friedrich (DE 260-1).

- On October 29, 2010, Investigator Friedrich informed Ferrian that Detective Erwin was unable to share Pruco's notarized affidavit with him until she "completed her case which could be quite some time."  Friedrich, therefore, requested that Pruco send him an affidavit, stating "[t]he one you already made will do fine." October 29, 2010 email from Friedrich to Ferrian (DE 260-1).

●	On October 29, 2010, Pruco sent the SIU Report to the FDFS.[7]  January 24, 2012 Ferrian Aff. ¶ 13 (DE 259-1).

According to Wells Fargo, Pruco's unexplained delay in producing the SIU Report alone rebuts Pruco's contention that it submitted the Report because it was required by statute.

Furthermore, Wells Fargo notes that Fla. Stat. § 626.989 requires an insurer to provide the FDFS only with "a report or information pertinent to [knowledge or belief of a fraudulent insurance act] and such **additional information** relative thereto **as the department may require.**"  Fla. Stat. § 626.989(b) (emphasis added).  Wells Fargo argues that Pruco's June 21, 2010 three-page standard fraud referral form fulfilled the statute's reporting requirement and that the only additional information that the FDFS required from Pruco was a "notarized affidavit," which Pruco submitted to FDFS's Detective Erwin. According to Wells Fargo, because the SIU Report was not a notarized affidavit, Pruco was not <u>required</u> to disclose its work product; rather, it  did so voluntarily, thereby waiving any work product protection.[8]

The undersigned agrees with Wells Fargo.  Although Fla. Stat. § 626.989(b)

---

[7]  An October 29, 2010 email from Pruco employee Ferrian to Investigator Friedrich states "attached are the documents you need. . . . The scanned document is my affidavit." October 29, 2010 email from Ferrian to Friedrich (DE 260-1).  Two documents are attached to this email.  The undersigned, however, is unable to ascertain from the descriptions of the attached documents whether the SIU Report was one of the documents attached or whether Pruco forwarded the SIU Report by another method.

[8]  Wells Fargo contends that Pruco submitted the SIU Report to the FDFS "in the hope that the Department would take action against Brasner."  Reply at 13 (DE 264). Although Pruco denies that its "motivation . . . was . . . to induce the Division of Insurance Fraud to take any sort of action with regard to the Berger Policy or against anyone involved with the Berger Policy," <u>see</u> November 7, 2011 Ferrian Aff. ¶ 8, McCrohan Decl. ¶ 8 (DE 244-1), its denial is undercut by the timing of its disclosure of the Report.   Although Pruco completed the SIU Report on June 8, 2010, it waited five months to submit the Report to the FDFS – only after it had commenced this litigation against Brasner.

required Pruco to report any known or suspected fraudulent insurance act, neither the statute nor the FDFS required Pruco to produce its confidential attorney work product. Indeed, the only document other than the standard fraud reporting form that the FDFS required of Pruco was a notarized affidavit, which Pruco submitted.  Pruco's disclosure of the SIU Report to the FDFS, therefore, was entirely voluntary.[9]

Pruco additionally argues that it did not waive the work product protection because it disclosed the SIU Report to the FDFS – not an adversary.  The majority of courts however, have recognized that a waiver of work product protection may occur when disclosure is made in a manner that "substantially increases the opportunity for potential adversaries to obtain the information."  Varson Golf Co. v. Karsten Mfg. Corp., 213 F.R.D. 528, 534 (N.D. Ill. 2003); see also Bethany Med. Ctr. v. Harder, Civ-A No. 85-2414, 1987 WL 47845, at *10 ("The majority rule provides that disclosure of attorney work product to a third party does not constitute waiver unless such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary. Consequently, only if such disclosure substantially increases the possibility that an opposing party could obtain the information disclosed, will the disclosing party's work product privilege be deemed waived.") (internal citation and quotation marks omitted); GAF Corp. v. Eastman Kodak Co., 85 F.R.D. 46, 51 (S.D.N.Y. 1979) (noting that the

---

[9] To the extent that Pruco may argue that it submitted the SIU Report in compliance with Investigator Friedrich's direction to provide him with an affidavit (in addition to the notarized affidavit provided to Detective Erwin), the argument is unavailing.  Friedrich had informed Pruco that a copy of the affidavit it had previously submitted would "do fine."  See October 29, 2010 email from Friedrich to Ferrian (DE 260-1).  Instead, Pruco chose to provide the SIU Report in lieu of, or in addition to, the affidavit.

"substantially increases" standard is "accepted by the majority of courts").  "Moreover, 'even a disclosure to a non-adversary that 'substantially' or 'materially' increases the likelihood that an adversary will obtain the information results in a waiver of the work product protection.'"  <u>Spanierman Gallery, Profit Sharing Plan v. Merritt</u>, No 00CIV5712LTSTHK, 2003 WL 22909160, at *3 (S.D.N.Y. Dec. 9, 2003) (quoting <u>Bank of Am., N.A. v. Terra Nova Ins. Co.</u>, 212 F.R.D. 166, 170 (S.D.N.Y.  2002)). "The question is whether the particular disclosure was of such a nature as to enable an adversary to gain access to the information."  <u>Benhia</u>, 176 F.R.D. at 280.

Wells Fargo argues that Pruco's voluntary production of the SIU Report to the FDFS substantially increased the opportunity for an adversary to obtain its protected work product.  It first notes that when Pruco disclosed the Report it did not indicate to the FDFS that the Report was confidential or request the FDFS to treat it as such.  Wells Fargo further explains:

> [A]t the time Pruco sent the Report in October 2010, Pruco knew that (1) Brasner had been indicted for insurance fraud in connection with [non-Pruco] policies and (2) was now under investigation for insurance fraud in connection with the Berger Policy due to (a) Pruco's 3-page June 2010 Fraud Referral Form; (b) the notarized affidavit that it had sent to Detective Anne Erwin at the Department; and (c) its October confirmation that it wanted the Department to pursue the investigation and possible prosecution of Brasner.  Thus, when Pruco sent its Report to the Department, it substantially increased the possibility that an adversary, such as Brasner, would obtain this information.
>
> Here, Pruco expected **and requested** that Brasner be investigated for his purported frauds in connection with the Berger Policy.  Had he been indicted, he would have been entitled to receive Pruco's Report in response to his Notice of Discovery." See Fla. R. Crim. P. 3.2220(b).  Therefore, when Pruco *voluntarily* submitted its Report to the Department

9

without requiring that it be treated confidentially, it substantially increased the possibility for its adversary – Brasner – to obtain the information.  Thus, under federal law, Pruco waived the report's work-product protection, and that waiver also applies to its other adversary – Wells Fargo. *See, e.g. In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) ("The waiver doctrine provides the voluntary disclosure of work product to an adversary waives the protection as to other parties.").

Reply at 14-15 (DE 264) (emphasis in original).  The undersigned agrees that Pruco's voluntary disclosure of the SIU Report to the FDFS substantially increased the likelihood that a potential adversary – Brasner via criminal discovery or Wells Fargo via a Public Records request – would obtain Pruco's work product.

Finally, Pruco contends that Wells Fargo improperly filed the SIU Report of record (in support of its Rule 60(b) motion) even though it knew that Pruco considered the document to be confidential and privileged.  More specifically, Pruco argues that pursuant to the parties' Stipulated Confidentiality Agreement and Protective Order (DE 44, which was adopted by the Court), the parties were permitted to mark documents "confidential" or "confidential – for attorneys' eyes only" and that Wells Fargo consented to Pruco designating the SIU Report "confidential – for attorneys' eyes only."  Yet, Wells Fargo nonetheless filed the Report in the public record without Pruco's consent and without affording Pruco an opportunity to seek to have it filed under seal.  Pruco, therefore, argues that the Court should strike Wells Fargo's Rule 60(b) motion and the attached SIU Report from the docket.

The undersigned declines to recommend that either the Wells Fargo motion or the SIU Report be stricken.  The Stipulated Confidentiality Agreement and Protective Order provides that it "governs all materials produced in response to any discovery request . . .

in this action made to or by any party or non-party." ¶ 1 (DE 44).  The SIU Report was not

produced to Wells Fargo in response to a discovery request in this litigation; rather, it was

produced in response to a Public Records request.  More significantly, the confidentiality

agreement provides:

> Nothing in this Order shall be deemed in any way to restrict the
> use of documents or information **obtained or publically
> available to a party outside the scope of discovery** in this
> litigation, whether or not the same material has been obtained
> during the course of discovery in this litigation and whether or
> not such documents or information have been designated
> Confidential or Confidential – For Attorneys' Eyes Only.

Stipulated Confidentiality Agreement and Protective Order ¶ 7 (DE 44) (emphasis added).

Pruco's argument, therefore, is without merit.

In sum, the undersigned concludes that Pruco voluntarily disclosed the SIU Report

to the FDFS and that such disclosure substantially increased the likelihood of an adversary

obtaining the document.  Wells Fargo – one of Pruco's adversaries – did, in fact, obtain the

SIU Report (through a Public Records request).

Based on the foregoing, it is hereby RECOMMENDED that the District Court find

that Pruco waived any work product protection that may have attached to the SIU Report,

that the SIU Report is not confidential, and that the SIU Report is properly before the Court

for its consideration in ruling on Defendant Wells Fargo Bank, N.A.'s Motion for Relief from

Summary Judgment pursuant to Federal Rule of Civil Procedure 60(b) (DE 253).

The parties will have fourteen (14) days from the date of being served with a copy

of this Report and Recommendation within which to file written objections, if any, with the

Honorable James I. Cohn, United States District Judge.  Failure to file objections timely

shall bar the parties from a *de novo* determination by the District Judge of an issue covered

in the report and shall bar the parties from attacking on appeal factual findings accepted

or adopted by the District Judge except upon grounds of plain error or manifest injustice.

See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson,

885 F.2d 790, 794 (1989).

      DONE AND SUBMITTED in Fort Lauderdale, Florida, this 28th day of June 2012.


_____
BARRY S. SELTZER
CHIEF UNITED STATES MAGISTRATE JUDGE


Copies to:

Honorable James I. Cohn
United States District Judge

All counsel of record

12