UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-80804-CIV-COHN/SELTZER

PRUCO LIFE INSURANCE COMPANY,

    Plaintiff,

v.

STEVEN M. BRASNER, individually and as
Principal of Infinity Financial Group, LLC;
MARK A. TARSHIS; INFINITY FINANCIAL
GROUP LLC; WELLS FARGO BANK, N.A.,
as Securities Intermediary; and John Does 1-10,

    Defendants.
_____/

## ORDER GRANTING WELLS FARGO BANK, N.A.'s RULE 60(b) MOTION

**THIS CAUSE** is before the Court upon Wells Fargo Bank, N.A.'s ("Wells Fargo's") Motion for Relief from Summary Final Judgment Pursuant to Federal Rule of Civil Procedure 60(b) [DE 253] ("Motion"). The Court has considered the Motion, Plaintiff Pruco Life Insurance Company's ("Pruco's") Response [DE 259], Wells Fargo's Reply [DE 264], the related filings, and is otherwise fully advised in the premises.

### I. BACKGROUND

On July 9, 2010, Pruco filed a five-count Complaint [DE 1] alleging, among other things, fraud in the procurement of a $10 million insurance policy on the life of Arlene Berger ("the Berger Policy"). As against Wells Fargo, Pruco sought a declaration that the Berger Policy was void *ab initio* for lack of an insurable interest at inception and requested that Wells Fargo be estopped from seeking a return of premiums paid on the Berger Policy. See Compl. at 19.

On November 14, 2011, the Court entered an Order Granting Pruco's Motion for

Summary Judgment and Denying Wells Fargo's Motion for Summary Judgment [DE 246] ("Summary Judgment Order") and a Final Judgment [DE 247]. Thereafter, on January 23, 2012, the Court entered an Order Granting Wells Fargo's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) [DE 255] and Amended Final Judgment [DE 256] to direct the Clerk of Court to release to Wells Fargo certain funds held in the Court's registry.

Meanwhile, on January 9, 2012, Wells Fargo filed the instant Motion seeking relief under Federal Rule of Civil Procedure 60(b). As the basis for its Motion, Wells Fargo presents Pruco's June 8, 2010 Special Investigation Unit Report [DE 253-1 at 4-9] ("SIU Report"). In applicable part, the SIU Report provides as follows:

> Background: *The Division of Insurance Fraud (DIF) opened an investigation into Producer Steven Brasner of Davie, FL in 2008. The investigation confirmed Brasner submitted life insurance applications using false information regarding prospective insured's net worth. He also pre-arranged for the life insurance policies to be sold on the secondary market in a manner to disguise the fact that they were intended to be Stranger Originated Life.*
>
> *Brasner's Prudential appointment was terminated in 2007 because he had a large debt that went to collections and turned very messy before being repaid. His name came up again in 2008 as he was named in a STOLI lawsuit from AXA. Underwriting did a review of the business of the two BGAs originally named in the lawsuit which included Brasner's business. They identified one of Brasner's in force cases that appeared suspicious as a potential settlement case but it was already outside the contestability period by that time: Arlene Berger . . . . SIU was asked to determine if there was any documented evidence of inflated or fraudulent financial data in this case.*
>
> Research *Review of the company records and internet research found indication this was a STOLI . . . .*

SIU Report at 1. Wells Fargo contends that this report raises disputed issues of material fact concerning its affirmative defenses of waiver, estoppel, unclean hands,

2

and laches, and therefore requests a trial on these affirmative defenses. Wells Fargo also argues that the report establishes that Pruco was not entitled to retain the premiums that Wells Fargo paid on the Berger Policy in 2009 and 2010. Therefore, Wells Fargo requests an Order directing Pruco to return to Wells Fargo $206,969.23 in premiums paid from January 2009 through June 2010.

## II. LEGAL STANDARD

Rule 60(b) provides, in pertinent part, that a court may relieve a party from a final judgment, order, or proceeding based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). "A motion for a new trial under Rule 60(b)(2) is an extraordinary motion and the requirements of the rule must be strictly met." Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1316 (11th Cir. 2000). These requirements include the following: "(1) the evidence must be newly discovered since the summary judgment order; (2) the movant must have exercised due diligence in discovering the new evidence; (3) the evidence cannot be merely cumulative or impeaching; (4) the evidence must be material; and (5) the new evidence must be such that it would produce a different outcome in the underlying action." Williams v. N. Fla. Regional Med. Center, Inc., 164 Fed. App'x 896, 898-99 (11th Cir. 2006) (citing Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003); Toole, 235 F.3d at 1316. Pruco argues that Wells Fargo's Motion must be denied under the first, second, and fifth prongs, because the SIU Report is not new evidence, Wells Fargo was not diligent in discovering the SIU Report, and the SIU Report would not

result in the Court reaching a different outcome.[1]

### III. ANALYSIS

As described below, the Court finds that the SIU Report is new evidence, Wells Fargo exercised due diligence in discovering the new evidence, and the SIU Report would have resulted in the Court reaching a different outcome in the Summary Judgment Order. Therefore, the Court will grant Wells Fargo's Motion and reopen this case for a trial on the issue of which party is entitled to the premiums paid in 2009 and 2010.[2] To the extent that Wells Fargo's affirmative defenses of waiver, estoppel, unclean hands, and laches relate to the issue of which party is entitled to the premium payments from 2009 and 2010, the case will be reopened as to these affirmative defenses as well. The Court's Summary Judgment Order and Amended Final Judgment stand on the determination that the Berger Policy is void *ab initio*.[3]

---

[1] Pruco also writes that the Motion should be denied under the fourth prong because the SIU Report is not material, see Resp. at 8 of 21, but Pruco fails to expand on this argument in its Response. Further, in accordance with the analysis section of this Order, the Court finds that the SIU Report is material evidence. Therefore, the Court will not deny the Motion on this ground.

Additionally, Pruco argues that the SIU Report is not properly before the Court because it is a privileged document. However, the Court has now determined that the SIU Report is not privileged. See Order Adopting Report and Recommendation [DE 275]; Report and Recommendation [DE 274].

[2] Wells Fargo requests that the Court direct Pruco to return the premiums it paid from January 2009 through June 2010 without a trial on that issue, but Pruco disputes the facts surrounding the SIU Report. See, e.g., Resp. at 7 of 21–109 of 21. Therefore, the Court declines to order a return of the premiums without a trial.

[3] Indeed, Wells Fargo states that it "is not arguing that the [SIU] Report would have made a difference as to this Court's ruling that the [Berger] Policy was void *ab initio*." Reply at 5 of 16. In the instant Motion, Wells Fargo does not seek a return of all premiums ever paid on the Berger Policy, only a return of the premiums paid in 2009 and 2010.

## A. The SIU Report Constitutes New Evidence

First, the SIU Report constitutes new evidence. Wells Fargo did not obtain the SIU Report until December 22, 2011, after the Summary Judgment Order and Final Judgment had been entered. See Declaration of David R. Hazouri [DE 253-1] ("Hazouri Declaration") ¶ 4. Pruco contends that Wells Fargo had the applicable information in its possession prior to the entry of judgment because Pruco had provided Wells Fargo with the email thread detailing Pruco's knowledge of the AXA lawsuit on October 14, 2011, before Final Summary Judgment was entered. See Oct. 14, 2011 Email [DE 259-6]. Pruco also highlights that Wells Fargo referenced Pruco's knowledge of the AXA lawsuit at the oral argument on the parties' cross-Motions for Summary Judgment on October 21, 2011. See Transcript of Summary Judgment Argument [DE 259-4] at 21:25-22:3 ("Red flags were there. They approved the assignment of the policy to Wells Fargo after they knew of the AX[A] litigation being filed. That is something we found out a week ago."). However, the SIU Report contains more information than simply Pruco's knowledge of the AXA lawsuit. As Wells Fargo notes, the SIU Report also reveals that "(1) Brasner was named in 'a STOLI lawsuit'; (2) Pruco looked for any Pruco policy originating from Brasner and found the Berger Policy; (3) the Policy 'appeared suspicious as a potential settlement case'; but (4) Pruco failed to follow-up purportedly because it was 'outside the contestability period by that time,'" and (5) "Pruco's review of publicly available information, such as the Property Appraiser's information on Mrs. Berger's home, revealed a 'strong indication of inflated net worth.'" Reply at 3 of 16–4 of 16; SIU Report at 1-2. Therefore, the Court finds that the SIU Report constitutes new evidence discovered after the Summary Judgment Order.

### B. Wells Fargo Was Diligent in Discovering the SIU Report

Second, Wells Fargo exercised due diligence in discovering the SIU Report. As Wells Fargo's counsel, David R. Hazouri, explains, he submitted Public Records Act requests on January 12, 2011 and October 12, 2011, but the Florida Department of Financial Services, Division of Insurance Fraud ("FDFS") did not produce the document until December 22, 2011. Hazouri Decl. ¶ 4. According to FDFS, the document was exempt from production as a "public record" until the investigation into Steven Brasner and the Berger Policy was concluded, which occurred in connection with Mr. Brasner's guilty plea to criminal charges brought by the State of Florida concerning other insurance policies. Id. ¶ 5. Mr. Hazouri states, "In all, I contacted FDFS approximately fifty times by telephone, email and/or letter in an effort to obtain the Report (and any other Berger Policy-related information) in a timely manner." Id. ¶ 6. Also, at the time the Summary Judgment Order and Final Judgment were entered, Wells Fargo had filed a Motion to Compel [DE 242], seeking to compel Pruco to produce the SIU Report.

Pruco argues that Wells Fargo was not diligent in obtaining the SIU Report and filing the instant Motion. See Resp. at 18 of 21–19 of 21. Based on Wells Fargo's Public Records Act requests, fifty attempts to contact FDFS to obtain the report, and Motion to Compel, the Court finds that Wells Fargo exercised due diligence in discovering the SIU Report and filing the instant Motion.

## C. The SIU Report Would Have Produced a Different Outcome Regarding the Return of the Premium Payments in 2009 and 2010

Third, the SIU Report would have produced a different outcome in the Court's Summary Judgment Order.  Although the SIU Report would not have changed the Court's holding that the Berger Policy amounts to an illegal wagering contract and is therefore void *ab initio* for violation of Florida's public policy against wagering contracts, see SJ Order at 20, the SIU Report raises factual issues regarding which party is entitled to the premiums paid on the Berger Policy in 2009 and 2010.  Therefore, the SIU Report would have resulted in a trial regarding the return of the premiums paid in 2009 and 2010.

In the Summary Judgement Order, after finding that the Berger Policy was void *ab initio*, the Court ruled that it would "leave the parties as it found them and decline to award Wells Fargo the return of its premium payments."  SJ Order at 27; see also SJ Order at 24-27.  In reaching this conclusion, the Court relied on TTSI Irrevocable Trust v. Reliastar Life Ins. Co., 60 So. 3d 1148 (Fla. Dist. Ct. App. 2011), for the following proposition: "Where a policy is void *ab initio*, 'neither party [can] elect to give effect to the policy at issue because it was void at the outset.  Furthermore, as a general rule, contracts that are void as contrary to public policy will not be enforced by the courts and the parties will be left as the court found them.'"  SJ Order at 26 (quoting TTSI, 60 So. 3d at 1149 (citing Harris v. Gonzalez, 789 So. 2d 405 (Fla. Dist. Ct. App. 2001) and Castro v. Sangles, 637 So. 2d 989 (Fla Dist. Ct. App. 1994)).  However, the TTSI decision notes, "We see no reason to depart from the general rule where, as in the instant case, the party seeking to enforce the contract is the only party who engaged in

7

deceptive and misleading conduct at the time the contract was entered into." TTSI, 60 So. 3d at 1150.  As explained below, the SIU Report raises a disputed issue of fact warranting a trial as to whether this Court should depart from the general rule articulated in TTSI and order the premium payments from 2009 and 2010 returned to Wells Fargo.

     Throughout this litigation, Pruco has always maintained that it sued for rescission of the Burger Policy as soon as it learned of Brasner's fraudulent activities through the April 2010 Wall Street Journal article.  See, e.g., Pruco's Response to Wells Fargo's Motion for Summary Judgment [DE 198] at 31; Pruco's Response in Opposition to Wells Fargo's Statement of Undisputed Material Facts [DE 199] at 17 ¶ 28; Pruco's Motion for Summary Judgment [DE 177] at 21 n.13.  The Court relied on this representation in reaching its decision in the Summary Judgment Order, noting, "Pruco had no reason to know the Berger Policy was an illegal wagering contract until the Wall Street Journal published a story about Mr. Brasner's frauds in 2010."  SJ Order at 26.  However, the SIU Report raises a factual dispute as to Pruco's knowledge of the fraud and the fact that the Berger Policy was an illegal wagering contract.  Wells Fargo argues that the SIU Report demonstrates that Pruco was "'on notice' of Brasner's fraud and the questionable nature of the Berger Policy since ***2008 – not 2010 –*** and thus well before Wells Fargo's client decided to buy the Policy in December 2008."  Mot. at 2.  Wells Fargo also contends "that the [SIU] Report verifies that Pruco negligently turned a blind eye to several indicia that, if timely and properly investigated, would have led Pruco to rescind or seek to void the Policy ***before*** it was sold to an innocent purchaser for value on the secondary market," Reply at 5 of 16, and "Because Pruco's own

undeniable inattentiveness and laxity led to the availability of the Policy on the secondary market, it does not deserve to retain the premiums, at a minimum, paid to and accepted by it after the Policy was sold to Wells Fargo's client in December 2008," id.  Pruco disputes these arguments.  See Resp.  The Court finds that the information contained in the SIU Report raises a disputed issue of fact regarding which party is entitled to the premiums paid in 2009 and 2010.  Therefore, the Court will reopen this case for trial on this issue.

     Wells Fargo also seeks a trial on the affirmative defenses of waiver, estoppel, unclean hands, and laches.  These affirmative defenses were rejected in the Summary Judgment Order, but there, as the Court noted, the affirmative defenses were based on "Pruco's alleged lack of diligence and purported failure to investigate red flags identified in the underwriting of the Berger Policy."  SJ Order at 21 (emphasis added).  The SIU Report does not affect that ruling.  Nonetheless, Wells Fargo now argues that the SIU Report shows that "Pruco has not shown that it adequately investigated and resolved the ***new and additional*** suspicions and red flags concerning the Berger Policy that arose ***in 2008*** (as evidenced in the [SIU] Report)," Reply at 6 of 16, and "Had Pruco diligently investigated and resolved its suspicions in 2008, the policy would not have been bought or sold on the secondary market and Wells Fargo would not have paid over $200,000 in premiums for a purportedly void policy," id.  To the extent that these affirmative defenses apply to Wells Fargo's arguments for return of the premiums paid in 2009 and 2010 based on information contained in the SIU Report, the Court will consider these arguments at trial.

## IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Wells Fargo Bank, N.A.'s Motion for Relief from Summary Final Judgment Pursuant to Federal Rule of Civil Procedure 60(b) [DE 253] is **GRANTED**;

2. The Order Granting Plaintiff Pruco Life Insurance Company's Motion for Summary Judgment and Denying Wells Fargo's Motion for Summary Judgment [DE 246] and the Amended Final Judgment [DE 256] are **VACATED** only as to the issue of which party is entitled to the premiums paid on the Berger Policy in 2009 and 2010;

3. The Clerk of Court is directed to **REOPEN** this case;

4. The Court will enter a separate Scheduling Order setting the trial and pretrial deadlines.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 25th day of July, 2012.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF